## Ex Parte Emelia Garza.

*No. 2879.  Decided February 26.*

1. **Constitutional Law.**—Municipal Corporations can exercise no powers but those which are conferred upon them by the act by which they are constituted, or such as are necessary to the exercise of their corporate powers, the performance of their corporate duties, and the accomplishment of the purposes of their association. The charter of a municipal corporation is its organic act, and furnishes the measure of its power. The corporation can exercise no power which the charter does not grant in express words, or which is not necessarily or fairly implied in or incident to the powers expressly granted, or which are not essential to the declared objects and purposes of the corporation.

2. **Same.**—As to Repeal by Implication a correct rule is stated as follows: "The presumption is not lightly to be indulged that the Legislature has by *implication repealed,* as respects a particular municipality, or as respects all municipalities, laws of a general nature elsewhere in force throughout the State; yet a charter or special act passed subsequent to the general law, and plainly irreconcilable with it, will to the extent of the conflict operate a repeal of the latter by implication. But by a well known rule, founded on solid reasons, such repeals are not favored; and the principle of implied repeal ought to be applied with extreme caution."

3. **Same.**—In determining the power of a municipal corporation to enact a particular ordinance, the charter by which it is claimed such power is conferred should receive a reasonable construction—that is, a construction which accords with the intention of the Legislature—and all reasonable intendments in support of the validity of the ordinance will be indulged. Under the above rules it is *held* that sections 72, 78, and 98 of the charter of the city of San Antonio (for which see the opinion) do not operate to repeal within the limits of said city articles 339, 340, and 341 of the Penal Code; nor to empower the said city, through its council, to enact an ordinance licensing bawdy houses. The power to regulate, suppress, and restrain bawdy houses does not carry with it the power to license such houses.

4. **Same—Bawdy Houses—Statutes Construed.**—While the offense denounced by article 341a of the Penal Code is in contemplation of law the same as that denounced in article 341, yet the acts constituting it are different; and that different punishments are prescribed for different acts constituting the same offense, in a different degree, or

by different classes of persons, is not objectionable legislation. The ordinance enacted by the city council of the city of San Antonio entitled "An ordinance to suppress and restrain bawdy houses within the limits of the city of San Antonio" is repugnant to article 341 of the Penal Code, and therefore void.

HABEAS CORPUS on appeal from one of the District Courts of Bexar. Tried below before Hon. W. W. King.

The opinion discloses the case.

*L. N. Walthall* and *Upson & Bergstrom,* for relator.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WILLSON, JUDGE.—Appellant Emelia Garza applied to the judge of the District Court of the Forty-fifth Judicial District of Texas for a writ of *habeas corpus,* praying to be discharged from custody in which she is held by Jacob Rips, a policeman of the city of San Antonio, under a warrant issued out of the Recorder's Court of said city, for the violation of an ordinance "to suppress and restrain bawdy houses within the limits of the city of San Antonio." The writ was issued as prayed for, and upon a hearing the writ was dismissed and appellant remanded to the custody of the respondent, from which order the applicant prosecutes an appeal to this court, and assigns the following error:

"His honor, the judge, erred in dismissing the writ of *habeas corpus* and in remanding the applicant for the writ to the custody of the respondent, in this: There is no valid or legal ordinance which authorized the issue of the warrant under and by virtue of which the applicant was arrested and is held in custody."

The ordinance in question is entitled "An ordinance to suppress and restrain bawdy houses within the limits of the city of San Antonio." It was passed and approved December 16, 1889, and was duly published. It provides for licensing bawdy houses within the limits of said city upon the payment of an annual license to the said city of $500; and also provides for the licensing of bawds. It also provides for the inspection of bawds, and prescribes penalties for violations of any of the provisions of the ordinance.

It is admitted that appellant violated the ordinance by keeping a bawdy house without obtaining a license to do so, and that she has been duly charged and arrested, and is now in custody for said violation.

It is further admitted that the license of $500 annually imposed by said ordinance is reasonable, and does not amount to a tax on the occupation.

Appellant attacks the validity of said ordinance, contending (1) that the city was not and is not authorized by its charter to enact it; and (2)

that said ordinance is contrary to the general laws of the State, and is therefore void.

By Act of August 13, 1870, the city of San Antonio, having a population of more than ten thousand inhabitants, was incorporated by special act of the Legislature under authority of section 5 of article XI of the Constitution.

There are three sections in the said act of incorporation under which it is claimed by the city that it had the power to enact the ordinance in question. They are as follows:

"Section 72. To license, tax, and regulate billiard tables, pin alleys, ball alleys; to suppress and restrain disorderly houses, tippling shops and groceries, bawdy houses, houses of prostitution or assignation, gambling and gambling houses, lotteries, and all fraudulent devices and practices, and all kinds of indecencies.

"Section 78. The city council shall have the right to enact all necessary ordinances to restrain and punish vagrants, mendicants, street beggars, and prostitutes; to restrain and control all gambling, and punish the keepers of all games and gambling devices with as great a penalty as the same is punished by the statutes of the State. The Recorder's Court of the city of San Antonio shall have the concurrent jurisdiction of all such misdemeanors, when committed in the corporate limits of the city of San Antonio. [Amendment of March 4, 1885.]

"Section 98. To prevent and punish the keeping of houses of prostitution within the city or within such limits therein as may be defined by ordinance, and to adopt summary measures for the removal or suppression, or regulation and inspection of all such establishments."

It is a settled rule that municipal corporations can exercise no powers but those which are conferred upon them by the act by which they are constituted, or such as are necessary to the exercise of their corporate powers, the performance of their corporate duties, and the accomplishment of the purposes of their association. The charter of a municipal corporation is its organic act, and furnishes the measure of its powers. It can exercise no power which the charter does not grant in *express words,* or which is not *necessarily* or *fairly implied* in or *incident* to the powers expressly granted, or which are not *essential* to the declared objects and purposes of the corporation. 1 Dill. on Mun. Corp., sec. 89; Cool. on Const. Lim., 4 ed., pp. 231, 235.

Such being the extent and limit of the power of a municipal corporation, did the municipality of the city of San Antonio have the power to enact the ordinance in question? Such power is certainly not conferred in express words in its charter. In the sections of the charter which we have quoted no express power to *license* houses of prostitution is granted, and there are no other provisions of the charter bearing upon the subject. In Davis v. The State, 1 Texas Court of Appeals, 425, which case has been

cited, and is relied upon by the city to sustain the validity of said ordi-- nance, the power to *license* houses of prostitution was granted the city of Waco in *express words,* and while we adhere to the correctness of that de-- cision, we do not consider it applicable to this case.

It is claimed by the city, however, that although its charter does not in express words confer the power to *license* houses of prostitution, it does by necessary implication confer such power by granting expressly the power to *restrain, regulate,* and *inspect* such establishments.

Judge Dillon, in his work on Municipal Corporations, says: " The presumption is not lightly to be indulged that the Legislature has by *implication repealed,* as respects a particular municipality, or as respects all municipalities, *laws of a general nature* elsewhere in force throughout the State; yet a charter or special act passed subsequent to the general law, and plainly irreconcilable with it, will, to the extent of the conflict, operate a repeal of the latter by implication. But by a well known rule, founded on solid reasons, such repeals are not favored; and the principle of implied repeal ought to be applied with extreme caution." 1 Dill. on Mun. Corp., sec. 88. Again, he says: "The right to license must be plainly conferred or it will not be held to exist." Id., sec. 361. And again, he says: "Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." Id., sec. 89.

In determining the power of a municipal corporation to enact a particular ordinance, the charter by which it is claimed such power is con-- ferred should receive a *reasonable construction*—that is, a construction which accords with the intention of the Legislature—and all reasonable intendments in support of the validity of the ordinance will be indulged. Gregory v. The State, 20 Texas Ct. App., 210.

Was it the intention of the Legislature to confer upon the city of San Antonio the power to *license* houses of prostitution? At the time of granting the charter of incorporation to said city, houses of prostitution were prohibited by a general law of the State. Penal Code, arts. 339– 341. If it was the intention of the Legislature to repeal this general law within the corporate limits of said city, it is reasonable to presume that such intention would have been plainly and expressly declared, and not left to be implied merely. It is reasonable to presume that if it had been intended to grant the power to *license* such houses the Legislature would, as it did in the charter of the city of Waco, have expressly granted such power. That such was not the legislative intent is also, and to our minds very cogently, shown by the fact that the power to *license* other occupations, etc., was expressly conferred upon the city. In section 72 of the charter, one of the sections hereinbefore quoted, the power to *license* billiard tables, pin alleys, and ball alleys is expressly granted, but as to bawdy houses, etc., named in the same section, the power to *license*

is not expressly granted. Section 73 confers expressly the power to *license* hackmen, draymen, etc. Section 75 to *license* hawkers, peddlers, etc. Section 76 to *license* merchants, hotels, etc. Section 77 to *license* public balls, etc. And in the sections cited the power to *regulate* is also expressly conferred, showing that *license* and *regulation* were not considered by the Legislature as equivalent terms, or that the power to regulate included the power to license.

We are of the opinion that by no reasonable interpretation or intendment can it be concluded that the Legislature intended to grant to the city of San Antonio the power to enact the ordinance in question. Such a power is not necessarily or fairly implied, nor essential to the declared objects and purposes of the corporation. Houses of prostitution may be restrained, regulated, and inspected without being licensed. Thus, the city might by ordinance require the keepers of such establishments to close them against visitors during specified hours; or might limit the number of prostitutes inhabiting such houses; or might require that such houses be designated by some sign whereby their character might be known to the public. Various other modes of restraint and regulation might be mentioned which could be adopted and made effectual without licensing such houses.

Counsel for respondent has referred us to some decisions of other States, which we confess support the proposition that the words "regulate" and "restrain" imply the power to license. Clark v. The State, 54 Missouri, 17, holds that the word "regulate," as used in an ordinance of the city of St. Louis, with reference to bawdy houses, by necessary implication conferred upon that city the power to *license* such houses. Two of the five judges deciding the case dissented from that view, and one of the dissenting judges delivered an opinion which to our minds advances very strong if not conclusive arguments against the correctness of the conclusions of a majority of the court. It is to be observed, however, with reference to the opinion of the majority of the court in that case, that the opinion was largely influenced by the fact that several previous charters of said city did not grant the power to the city to *regulate* such houses, but only granted the power to *suppress* them. Judge Dillon, in referring to the opinion of the majority of the court, remarks that "in view of the legislation recited in it the opinion seems to be sound." 1 Dill. on Mun. Corp., sec. 88, note 2. Now, while previous legislation—that is, previous charters—may in that case uphold the construction of the majority of the court, there is no room or basis for such argument or intendment in this case; but, on the contrary, as we have heretofore stated, the same charter under which it is claimed the power to license houses of prostitution exists by implication, in express words grants the power to *license* numerous other trades and occupations, thus, it seems to us, excluding the conclusion that the power to license such houses was intended to be granted.

Smith v. Madison, 7 Indiana, 86, and Burlington v. Lawrence, 42 Iowa, 345, cited and relied upon by counsel for respondent, are, we concede, authorities supporting the proposition that the power to restrain and regulate includes the power to license.   We can not, however, concur in those decisions, nor admit the soundness of the reasons upon which they are grounded, especially in the case under consideration, where it so plainly appears, we think, that the Legislature did not intend to grant the power which the city has assumed in enacting the ordinance in question.

It is further claimed by respondent that said ordinance is not in conflict with any general law of the State; that there is no valid general law of the State prohibiting houses of prostitution.

It is contended by counsel for respondent that the Act of April 4, 1889 (Acts 21st Leg., pp. 33, 34), is void for uncertainty, because it prescribes different penalties for the same offense; that is, that for the offense of keeping a disorderly house article 341 prescribes a fine of $200 for each day the house is kept, while for the same offense article 341a prescribes a fine of not less than $1 nor more than $200 for each day the house is kept.

As we understand and construe articles 341 and 341a they have reference to different and distinct matters, and to different classes of offenders.   Article 341 prescribes punishment for those who *keep* disorderly houses, while article 341a punishes those who employ or have in service, in theatres, dance houses, etc., prostitutes, etc.   While the class of offenders named in article 341a are keepers of disorderly houses, as such houses are defined in article 349, and are to be deemed guilty as such, as provided in article 341a, still, the punishment prescribed for them is not the same as is prescribed for that other class of offenders who keep houses of prostitution, or opium resorts.   While the offense is in legal contemplation the same, the acts constituting it are different; and that different punishments are prescribed for different acts constituting the same offense in a different degree, or by different classes of persons, is not objectionable legislation.

Our conclusion is that the ordinance in question is without authority of law; is repugnant to a valid general law of the State, and is void; and the judgment of the court below is reversed and the appellant is discharged from custody at the cost of respondent.

*Ordered accordingly.*

Hurt, J., absent.