·ADAMS et al. v. ROCKWALL COUNTY.
(No. 775–3915.)

(Commission of Appeals of Texas, Section A. March 10, 1926.)

1. Eminent domain ⊙⇒8—Power of Rockwall county to condemn land for roads does not extend within cities having more than 1,000 and less than 5,000 inhabitants (Sp. Laws, 1913, c. 84, amended by Sp. Laws 1919, c. 67, amended by Sp. Laws 3d Called Sess. 1920, c. 90; Rev. St. 1925, arts. 1016, 1082, 1086, 1201, 1202, and 6703).

Power of Rockwall county to condemn land for roads under Sp. Laws 1913, c. 84, for which was substituted Sp. Laws 1919, c. 67, as amended by Sp. Laws, 3d Called Sess. 1920, c.

90, does not extend within municipalities having more than 1,000 and less than 5,000 inhabitants, their power to condemn land for roads under Rev. St. 1925, arts. 1016, 1082, 1086, 1201, 1202, being exclusive thereof, this appearing to be the legislative intent in view of article 6703.

2. Eminent domain ⊙⇒8—Fiat by engineers of state road that route be changed has no weight on question of county's authority to condemn land.

Fiat by engineers of road being built by county, state, and federal government that route be changed has no weight on question of county's power to condemn land therefor.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Condemnation proceeding by Rockwall County against W. H. Adams and others. Judgment for defendants was reversed by the Court of Civil Appeals (244 S. W. 842), and defendants bring error. Judgment of the Court of Civil Appeals reversed, and judgment of the trial court affirmed.

Neyland & Neyland, of Greenville, and A. H. Mount, of Dallas, for plaintiffs in error.

H. M. Wade and C. G. Miller, both of Rockwall, for defendant in error.

NICKELS, J. Royse is a municipality incorporated under the general law for cities and towns. At all times in question it had more than 1,000, and less than 5,000, inhabitants, and was within the application of article 854, R. S. 1911, article 854, Vernon's Sayles' Ann. Civ. St. 1914 (including the amendment of 1913), and articles 1016, 1082, 1086, 1201, and 1202, R. S. 1925; more extended reference to these general laws being made hereinafter.

The Thirty-Third Legislature enacted a local road law for Rockwall county (chapter 84, Special Laws, Regular Session, 1913). Subsequently, and under the general law touching the matter, the county issued bonds to procure money with which to construct, maintain, etc., macadamized, paved, etc., roads; the record does not more definitely show the purpose of the issue. The Thirty-Sixth Legislature by chapter 67, Special Laws of 1919, Regular Session, passed an act, which is called an "amendment" of the 1913 road law, but which, in reality, is a substitute therefor, as shown by the enacting language of the first ·section. The 1919 act, just mentioned, refers to the fact of the previous bond issue, without stating its purpose except that it was for the improvement "of roads," declares that no "road" shall be improved with the "bond money" without "the assistance of a competent engineer" for whose selection provision is made, provides for the laying out of the "roads and highways" in "the most direct and practicable route," declares that "the highway to be con-

structed under federal and state aid shall commence at the Dallas county line, and pass through the town of Rockwall, and across the public square, and through the town and streets of Fate, and through the city of Royse to the county line," and that "the road from Dallas county line through the towns of Rockwall, Fate, and Royse to the county line, and known as state highway No. 1 shall be the first road constructed," etc. In view of the fact that the purpose in the minds of the voters when the bonds were authorized (February 15, 1913) is not more fully disclosed, the authority of the Legislature, by a subsequent special act, to supply the details mentioned as to the use of the money, is assumed as existent for present purposes. A like assumption is indulged in respect to the act next mentioned. By chapter 90, Special Laws of 1920, Third Called Session, the following addition to chapter 67 was made:

"If it shall appear expedient or necessary to the commissioners court of Rockwall county, Texas, for the purpose of straightening, widening, or draining any established road, or to build, repair, or maintain any public road, to take or occupy any land or to use any timber, earth, sand, clay, gravel, rock or other necessary material, the commissioners court may enter upon, occupy and take such land," etc., (and if compensation therefor is not agreed to by the owner) "may proceed to condemn said land," etc., in the same manner that railroad companies, etc., "may condemn."

Main street (duly established and maintained by Royse) traverses the city in an eastward-westward direction in conformity with the general route of said "state highway No. 1" as described in the 1919 act. In locating the route of that highway, the commissioners' court made it enter the city (from the west) over Main street, and follow that street to a point near the lots owned by W. H. Adams and wife and Jones Adams. At the point mentioned, the comissioners' court propose to have the route diverge from Main street so that it shall cross those lots and extend, thence, to the city limits on the northeast; the divergence being necessary, it is said, because the "engineers" of the state highway commission and of the county have so required. The owners of the lots objected to the proposed use of their land, and refused to agree to the "award" therefor. Thereupon the commissioners' court, in the name of the county, brought this condemnation proceeding in order to take the parts of the lots desired for the purpose. The owners duly interposed pleas (exceptions) challenging the authority of the county to condemn land within the city for the purpose named, and those pleas were sustained by the trial court, and judgment was rendered against the county. Upon appeal, the judgment was reversed (244 S. W. 842), and the cause remanded; it being the

opinion of the honorable Court of Civil Appeals that the special acts referred to "repealed" the general laws in so far as the latter applied to the subject-matter of condemnation of land within the city of Royse for the purpose named. Writ of error was allowed upon assignments denying the county's authority in the premises.

[1] The county admits, as, indeed it would be compelled to admit, that the power claimed, if it exists at all, is delegated in that provision of the 1920 special act which is quoted above. That provision does not contain any expressed declaration that the authority given may, or may not, be exercised in respect to land, or a road (proposed or actual), within an incorporated city or town. Its terms, however, probably would bear a construction making operative the power in relation to roads at any place in the county, if it stood alone in relation to the subject, and a contrary legislative intent were not disclosed by other laws. In view of the conclusions reached, and to be stated, we merely assume that possible meaning for its terms, for, in our opinion, there are other statutes effectually denying to the county the power assumed. The legislative intent is the thing to be ascertained; once found, it may rightly cut down the otherwise possible and apparent significance of the general terms employed. And the search for intent must include consideration of all laws any wise in pari materia, their chronology as well as their subject-matter.

Prior to 1879, the Legislature enacted a statute defining the powers of incorporated towns and cities, and therein provided that they should "have the exclusive control and power over the streets, alleys and public grounds and highways of the city," etc. R. S. 1879, art. 375. That provision, with some additions, was re-enacted in 1889 (Acts 1889, c. 2), and in 1911 (R. S. 1911, art. 854). It was re-enacted also in 1913 (at the same session at which the Rockwall County Road Law was passed) in this form:

"Any incorporated city or town in this state shall have the exclusive control and power over the streets, alleys and public grounds and highways, of the city, and to abate and remove encroachments or obstructions thereon; to open, alter, widen, extend, establish, * * * said streets," etc. Article 854, Vernon's Sayles' Ann. Civ. St. 1914.

In 1925 the provision was again re-enacted, but in a form which restricts its application to "any incorporated city or town containing not more than five thousand population." Article 1016, R. S. 1925. There does not appear to be an ambiguity in the language thus employed by the Legislature to express its intent as to what agency should exercise control over the highways within incorporated cities and towns, or as to the "exclusive" nature of that control. The effective opera-

tion of the provision, as against the county, has illustration in the case of Feris v. Bassett (Tex. Civ. App.) 227 S. W. 233, 235, wherein it was held that the extension of city boundaries had the effect of ousting the county from control of those portions of an established public road which were thus brought into the city.

It becomes manifest, therefore, that the local road law must be given an effect which would repeal (more accurately speaking, introduce an exception into) the terms of what is now article 1016, R. S. 1925, before it can be said that a county may assume such power over highways, actual or proposed, within an incorporated city as that now claimed by Rockwall county. For present purposes, we assume the power of the Legislature, through a local or special act, to repeal (pro tanto) or to ingraft upon the general law an exception. But "the presumption is not lightly to be indulged that the Legislature has by implication repealed, as respects a particular municipality, * * * laws of a general nature elsewhere in force throughout the state. * * * Such repeals are not favored; and the principle of implied repeal ought to be applied with extreme caution." In re Garza, 13 S. W. 779, 28 Tex. App. 381, 19 Am. St. Rep. 845. Obviously, there was no express repeal of the general law. In our opinion there is no warrant for the idea of an implied repeal or of an intent to carve the city of Royse from the application of the general law. It seems to us that all reasons are against that intent.

In the first place, there is no irreconcilable conflict. The terms of the special law are rightly susceptible of an interpretation which would make them evidence a legislative purpose to have the powers there given employed in respect to roads outside of the incorporated cities and towns so as to provide for their construction in such manner as that they shall connect with streets and highways of the cities and towns and so "pass through" those cities and towns as commanded. When the authority granted the commissioners' court is thus exercised within its territorial jurisdiction, there can arise no interference with the city authorities in their "exclusive control" of the streets and highways within the cities, and both laws will operate with that harmony and accord which we believe was contemplated.

In the second place, the general law is the most recent expression of legislative will, for it was re-enacted in 1925. The declaration of purpose is so expressed as to be free of doubt; i. e., "any incorporated city or town * * * shall have the exclusive control." Control may not, at the same time, be "exclusive" in one body and parceled out to two bodies. Hence, if there were such irreconcilable conflict in the two acts as to present the question of implied repeal, the time and the emphatic nature of the general law would determine that question against the special one.

In the next place, confirmation of the views already expressed exists in the enactment and purpose of other general laws touching the subject-matter. By chapter 4, Acts of 1923, Regular Session, the Legislature provided that any city "having more than 1,000 inhabitants" may "proceed in accordance with the provisions hereof independently of and without reference to any other applicable law or charter provision," to "lay out, open, establish, widen, straighten, or extend *any highway within its limits* and purchase, condemn, and take property therefor," etc. Articles 1201 and 1202, R. S. 1925. The fact must be apparent that, if the county may, under the authority of the special road laws, do what it now proposes, the city may immediately, in virtue of the plain terms of articles 1201 and 1202, proceed to undo what shall have been done by the county, or the lesser thing of mere alteration. The existence of the 1923 general act must be taken as evidence of a legislative interpretation of the special law and of the intent to leave the two municipalities as they were before harmoniously operative within their respective orbits. This idea, we believe, also has support in the terms of every other statutory provision in any way relating to the subject; e. g., articles 1082 and 1086, R. S. 1925. Article 6703, R. S. 1925, in part, declares that the commissioners' court "shall assume and have control of the streets and alleys in all cities and incorporated towns in Texas which have no de facto municipal government in the active discharge of their official duties," thereby affirming the proposition that the right of such control, in whole or part, does not exist where, as here, the city has its complement of officers duly selected, qualified, and acting: Bridgers v. City of Lampasas (Tex. Civ. App.) 249 S. W. 1083.

Our people are firmly committed to the doctrine of local self-government. Even as subjects of Spain and citizens of Mexico they lost no opportunity to exhibit the faith, and throughout the history of Texas as a republic and as a state they have taken great pains to give the principle definite application in usage, enactment, and Constitution. The doctrine has appropriate relation to avenues of passage within a chartered community, and, perforce, the claim now asserted under the special act is premised upon a legislative rejection of the ancient principle. We cannot accept the postulate, for neither the words nor the implications of the statute compel it, as they would have to do, very clearly, before so radical a departure from the general policy, immemorially established, could rightly be decreed.

[2] The insistence that the "engineers" fiated the change of route has no weight. That fact may well illustrate a dangerous

tendency of coercive usurpation, but it lacks much of supplying lawful authority.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the trial court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.