The CITY OF PINEY POINT VILLAGE, Texas, et al., Appellants,

v.

HARRIS COUNTY, Texas, et al., Appellees.

No. 15869.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 20, 1972.

Rehearing Denied April 27, 1972.

Paul Strong, Houston, for appellant City of Piney Point.

Fred M. Lange, Hugh E. Hackney, Houston (Fulbright, Crooker & Jaworski, Houston, of counsel), for appellants Thomas J. Bate and wife.

John Held, Lee C. Clyburn, Houston (Baker & Botts, Houston, of counsel), for appellants Percy Selden and wife.

Joe Resweber, County Atty., Edward J. Landry, John B. Reese, Asst. County Attys., Louis Paine, Jr., Thomas W. Houghton, Houston (Butler, Binion, Rice, Cook & Knapp, Houston, of counsel), for appellees.

Jo E. Shaw, Jr., City Atty. for City of Bunker Hill Village, Harman Parrott, for City of Hedwig Village, Ruth B. Bivin, individually and for Stillforest Property Owners, Jamail & Gano, Joseph D. Jamail, John Gano, Wm. J. Stradley, Houston, amici curiae.

BELL, Chief Justice.

Believing we were in error in our original disposition of this appeal, appellees' motion for rehearing is granted and the judgment of the trial court is affirmed. Our original opinion is withdrawn and the following is substituted as the opinion of the court.

The City of Piney Point Village, herein called Piney Point, Percy Selden and wife, and Thomas J. Bate and wife, brought suit against Harris County and the members of the Commissioners Court, in their official capacities, seeking to prevent the building by Harris County of an extension of San Felipe Road within the corporate limits of Piney Point. The full extension proposed would run from South Voss Road in the City of Houston west to Memorial Drive in Piney Point. The individual plaintiffs are property owners in Piney Point whose property the County seeks to condemn. Chester Reed, Trustee, and First Continental Development Corporation, land owners on that part of the extension lying in Houston, were allowed to intervene. They take the same position as does Harris County. A declaratory judgment was

sought to declare the previous attempt of Harris County to obtain exclusive control over the extension within Piney Point, through agreement, was void. Also injunctive relief was sought by all plaintiffs.

After trial to a court without a jury the court rendered judgment for the appellees.

On August 17, 1955, the Board of Aldermen of Piney Point passed the following ordinance, which is No. 16:

### AN ORDINANCE AGREEMENT BETWEEN PINEY POINT VILLAGE AND HARRIS COUNTY

ORDINANCE NO. 16

BE IT ORDAINED BY THE BOARD OF ALDERMEN OF PINEY POINT VILLAGE THAT:

WHEREAS, it is the desire of Harris County to procure the right and authority to extend San Felipe Road to a point within the town limits of Piney Point Village from its intersection of Buffalo Bayou to the intersection of Memorial Drive, and

WHEREAS, the town of Piney Point Village is willing to grant such right and authority to Harris County provided the lines of said extension are set in accordance with the plat attached to this ordinance and made a part thereof, this being necessary in order that the town of Piney Point Village may know the approximate location of the right of way lines in order to enforce its zoning ordinance relative to the abutting property owners and further provided that Harris County agrees to maintain in good condition without cost to the town of Piney Point Village this extension of San Felipe Road between Buffalo Bayou and the intersection with Memorial Drive and also agree to allow the placement of utility lines, poles, etc. within the right of way of said extension. In consideration of Harris County agreeing to the foregoing requirements as signified by their acceptance in the place provided, the town of Piney Point Village, its successors and assigns hereby grants and gives to Harris County Texas, a body corporate and politic, its successors or assigns, for a period of ten (10) years from the date hereof, with option to extend same for an additional ten (10) years the absolute right and authority to widen, to set building lines, to construct, to improve, maintain, control and take into the County Road System, all of that part of San Felipe Road, extension lying within the town limits of Piney Point Village, from its intersection with Buffalo Bayou to its intersection with Memorial Drive as shown on the tentative plat attached hereto.

Passed this 11 day of August, 1955.

(signatures)

Accepted and approved this 29th day of September, 1955.

(signatures)

At the bottom of the ordinance where it was passed was a place for the County to accept and approve. It was "Accepted and approved" on September 29, 1955.

At the time of its passage Piney Point was a village incorporated pursuant to Articles 1133 et seq., Vernon's Ann.Civ.St. It remained a village until June, 1957, when it adopted the provisions of Articles 961 et seq. and thus became a general law city. In 1961 by Ordinance 168 Piney Point changed its name and ratified and confirmed all things done by it under its old name.

At the time of passage of the ordinance Memorial Drive was a part of the County Road System and was maintained by the County. It was removed from the system April 9, 1969, and has not since been maintained by the County. Voss Road from Westheimer Road to Buffalo Bayou, just north of the intersection of Voss and San Felipe, was in the County Road System until April 9, 1969, when it was removed. However, it was restored November 6, 1969. For some years prior to the incorporation of Piney Point the Planning Commission of the City of Houston, in its planning of a metropolitan road system, had projected this extension of San Felipe.

On November 3, 1955, Harris County set the building lines and defined the right of way. In 1959 the legislature passed what is known as Article 6674n–2, V.A.T.S. The pertinent part reads as follows:

"The right of eminent domain within the boundaries of a municipality with prior consent of the governing body of such municipality is hereby conferred upon counties of the State of Texas for the purpose of condemning and acquiring land, right of way or easement in land, private or public, except property used for cemetery purposes, where said land, right of way or easement is, in the judgment of the Commissioners Court of such county, necessary or convenient to any road which forms or will form a connecting link in the county road system or a connecting link in a State Highway."

In 1913 the legislature passed a special road law for Harris County. Local and Special Laws of Texas, Acts of 33rd Legislature, Chapter 17, p. 64 et seq. We will notice its material terms later in this opinion.

On May 6, 1963, Harris County paid Kinkaid School $11,619.40 for land in Piney Point which was to be a part of the right of way. On September 23, 1965, Harris County exercised its option to extend its rights conferred under Ordinance 16 for ten years. This option was exercised after Piney Point Council, on September 13, 1965, had passed a motion instructing its City Attorney to write the County advising it of the necessity of taking action if it wished to extend its rights, as the option expired September 29, 1965. The letter was written. On August 4, 1967, the County bought additional land in Piney Point for right of way at a cost of $29,664.05. On June 23, 1969, Piney Point Council passed a motion directing the City Attorney to write a letter, for the Mayor's signature, notifying the County that the agreement relating to the extension into Piney Point was void. The letter was written and was received by the County July 10, 1969. As of this latter date the County had not purchased any right of way for the part of the extension lying in the City of Houston. However, a subdivider prior to such date had built 998 feet of the extension in Piney Point so that less than one-half of the extension in Piney Point remained to be completed. The 998 feet of road was constructed in accordance with County specifications. Also, prior to July 10, 1969, the County had spent large sums extending San Felipe from the east westward to Voss and had made financial arrangements for segments of the right of way westward from Voss to the corporate limits of Piney Point. The County, however, up to that date had not actually purchased any right of way west of Voss in the City of Houston nor had it let a contract for or

commenced construction of the Extension west of Voss. After July 10, 1969, the County purchased the right of way for the extension in Houston and contracted for and completed this part of the extension in Houston. The cost was about $1,216,500.00.

In October, 1968, the County directed its engineer to proceed to secure the necessary right of way. In May, 1969, the County authorized the acquisition of right of way across the Bate and Selden property and authorized the County Attorney to institute condemnation proceedings if necessary. On March 4, 1971, the County again directed that condemnation proceedings be instituted against the Seldens and the Bates. On July 1, 1971, the Commissioners Court by an order found "that the land, right of way or easements acquired or to be acquired for the proposed extension of San Felipe Road from Voss Road to Memorial are, in the judgment of the Commissioners Court, necessary or convenient to a road or roads which form or will form a connecting link in the County Road System or a connecting link in a State Highway."

Up until August 9, 1969, Memorial Drive and Voss Road were a part of the County Road System, when they were dropped by the County. Voss Road was restored November 6, 1969, to a point from Westheimer Road to a point just north of San Felipe. Memorial Drive has never been restored. Westheimer, where Voss intersects, is a State highway. No part of Memorial is a County road or a State highway. Memorial connects with State Highway 6 some eight miles west of the point where it would intersect with the proposed extension. The result is that from the time Ordinance 16 was passed and accepted until April 9, 1969, the extension would connect with two County roads. From the last date until November 6, 1969, it would not connect with any County road. Since the latter date it would connect at the east with a County road (Voss) and on the westerly end with Memorial at a point where it is neither a State highway nor a County road.

Piney Point in its pleadings offered to pay the County the amount it had paid for right of way purchased in Piney Point.

The extension lies in Commissioner's Precinct 3. The Commissioner of that precinct candidly testified that on principle he was opposed to any road within an incorporated city being maintained by the county or within the County Road System. So far as he was concerned, if it could be legally done, he would be in favor of dropping the San Felipe extension as a County road after it was completed.

The evidence shows that some 8,000 automobiles would use the extension each day.

The trial court made the following conclusions of law that are material to our disposition of this appeal:

1. Ordinance No. 16 is a valid contract binding on the County and Piney Point.

2. Under such agreement Piney Point has consented to the condemnation of, and Harris County has the right to condemn, the right of way necessary for the extension of San Felipe.

3. Such agreement fully complies with Article 6674n–2.

4. Such agreement has not been breached by Harris County by failure to maintain Memorial Drive or otherwise.

5. If the City of Piney Point Village ever had the right to rescind such agreement with Harris County, which the court concluded it did not have:

(a) The City waived such right.

(b) The City is estopped from any recovery.

(c) The City has been guilty of laches and does not come into court with clean hands.

8. Whether or not Harris County was, prior to the 1959 enactment of Article 6674n–2, authorized by statute or otherwise

to condemn land within the limits of the City is a moot point.

Conclusions 6, 7, 9 and 10 are not material to this appeal.

For the first time appellees emphasize the provisions of the Harris County Road Law.

We hold that Harris County by virtue of the Harris County Road Law had the authority to open, construct and control the proposed extension of San Felipe Road within the corporate limits of Piney Point.

A comprehensive special road law for Harris County was passed by the legislature in 1913. Local and Special Laws of Texas, Acts of the 33rd Legislature, Ch. 17, p. 64 et seq., herein referred to as Harris County Road Law. The material parts of that law are, in substance, as follows:

Section 1. . . . the commissioners court of Harris County shall have *control* (emphasis ours unless otherwise indicated) of *all roads*, bridges . . . and all works and constructions incident to its roads, bridges and drainage, that have heretofore been laid out or constructed, *or that may hereafter be laid out or constructed by Harris County*, or under its direction.

Section 12. This section provided for the exercise of the power of eminent domain in the same manner as authorized by railroads, where it was necessary to occupy any land for the opening, grading, construction or maintenance of, any public road of said county. While this section was repealed by Acts of the 50th Legislature, 1947, Chapter 205, p. 361, the amending Act provided "Eminent domain proceedings shall be governed by the General Statutes authorizing counties to institute and maintain such proceedings."

Section 22. This provides "the Commissioners Court shall have the right *to lay out roads* to a width of not more than 120 feet, *provided same shall con-*

*nect with main roads leading into the City of Houston.*"

Section 29. "Whenever in this Act, or any general law, the *word 'Road'* is used, the same is hereby defined to mean in so far as Harris County is concerned, *all road beds, ditches,* drains, bridges, culverts and *every part of every road, whether inside or outside of any incorporated city or town in Harris County*, or not."

Section 33. "The provisions of this Act are, and shall be, held and construed to be cumulative of all General Laws of this State, on the subject treated of in this Act, when not in conflict therewith, *but in case of such conflict this Act shall control as to Harris County.*"

The effect of the Harris County Road Law, which was a special act, is to give the County authority to lay out and control county roads within incorporated cities or towns if they connect with main roads leading into the City of Houston. Sections 22 and 29, Harris County Road Law. The proposed extension connects with two main roads leading into the City of Houston, to wit: Voss Road and Memorial Drive. We feel the record shows they are two of the main roads and we judicially know they are. Section 33 of said law *expressly provides* that the provisions of the Act shall, as to Harris County, control when in conflict with any general law.

In 1955, when the County and Piney Point entered into the contract above set out, Article 1146, V.A.T.S. of 1925 was applicable to Piney Point. It was a general statute applicable to all cities within a given population bracket. It provided that the Board of Aldermen should "have exclusive control over streets and alleys . . . within the corporate limits; provided that with the consent of the Board of Aldermen, where streets are continuations of public roads, the Commissioners Court shall have the power to construct *bridges* and other improvements thereon which fa-

cilitate the practicality of travel on said streets."

When Piney Point became a general law city, Article 1016, V.A.T.S. of 1925, became applicable. This article provides that such a city ". . . shall have the exclusive control and power over the streets, alleys, and public grounds and *highways of the city or town . . .*"

The establishment and control of public roads is primarily a function belonging to the State, and the legislature, except where restricted by the Constitution, may delegate the function to political subdivisions of the State or to such other agency or instrumentality, general or local in its scope, as it may determine. Robbins v. Limestone County, 114 Tex. 345, 268 S.W. 915. The legislature has authority to pass special or local laws authorizing counties to lay out, construct and maintain roads. Tarrant County v. Shannon, 129 Tex. 264, 104 S.W.2d 4; Dallas County v. Plowman, 99 Tex. 509, 91 S.W. 221.

We hold that under the express provisions of the Harris County Road Law, which are above noticed, Harris County may open, construct and maintain county roads within the corporate limits of cities such as Piney Point if such road connects with main roads leading into the City of Houston. We do not have before us, and therefore do not pass on, whether the same rule would apply to roads within the City of Houston. This is a special law and its provisions, where in conflict with the general law, on the same subject will control. The special law, in such case, creates an exception to the general law. Jefferson County v. Board of County and District Road Indebtedness, 143 Tex. 99, 182 S.W.2d 908; Dallas County v. Plowman, supra; City of Laredo v. Martin, 52 Tex. 548; Ex Parte Neal, 47 Tex.Cr.R. 441, 83 S.W. 831; American Canal Co. of Texas v. Dow Chemical Co., 380 S.W.2d 662 (C.C.A.—Houston, 1st writ dism'd); Gabbert v. City of Brownwood, 176 S.W. 2d 344 (C.C.A.—Eastland, writ ref.).

The Harris County Road Law may be said to be in conflict with Articles 1146 and 1016. The Road Law under the express provisions of Section 33 controls over a conflicting general law. The effect of this section has not been changed in any manner. While Articles 1146 and 1016 were re-enacted by the codification of 1925, this did not repeal the Road Law. In the chapter labeled "Final Title," Section 19 provides "That all laws, civil or, criminal, of a *local nature, operating in particular counties,* cities or towns, . . . operative when these Statutes go into effect . . . *are not affected by the repealing clause of this title."* The repealing clause referred to is Section 2 and it provides that all *general laws* not included in the codification, or which are not expressly brought forward, are repealed. This evidences a legislative intent to reaffirm the Harris County Road Law which, as we have above discussed, is controlling over the general statutes noted.

In the original Harris County Road Law, Section 12 conferred the right of eminent domain on the County in connection with the acquisition of land or rights of way for road purposes, the right to be exercised in a manner employed by railroad companies. In 1947 this section was repealed but the repealing act provided eminent domain proceedings should be governed by the general statute authorizing counties to maintain such proceedings. Article 3264a, V.A.T.S. authorizes counties to condemn property for road purposes. Tarrant County v. Shannon, supra. When this article is read in conjunction with the Harris County Road Law, we feel the right of eminent domain was conferred on Harris County to acquire property within the corporate limits of cities such as Piney Point for the construction of County roads connecting with main roads leading into the City of Houston. We find from the record that the proceedings in condemnation here involved were being prosecuted under the Harris County Road Law, Articles 3264–3271, 6789a, and 6674n–2, V.A.T. S.

There are cases such as State v. Jones, 18 Tex. 874; Norwood v. Gonzales County, 59 Tex. 218, 14 S.W. 1057; Adams v. Rockwall County, 280 S.W. 759 (Tex. Com.App.), judgment approved, and Benat v. Dallas County, 266 S.W. 539 (C.C.A.—Dallas, writ refused), that hold a county can exercise no control over city streets where there is an active city government and has no right of eminent domain for acquiring property to construct roads in cities. Those cases must be read in the light of the facts involved in each. It is noted that in each of them there was no special statute such as we have here authorizing a county to construct and control roads within a city where they connect with roads leading into another city. Each of those cases, however, beginning with State v. Jones, recognizes the authority of the legislature to confer on counties the power to control county roads within a city and to exercise the right of eminent domain to effectuate that power.

It may be rationally argued that the above construction may bring counties and cities into conflict. Any such possible conflict may be eliminated by legislative action. It is not within the province of courts to legislate.

In the light of what we have said above, we feel it was unnecessary for the Commissioners Court to have the agreement with Piney Point. Nevertheless, if consent on the part of the municipality be necessary, the above agreement constitutes consent. The ordinance when accepted by the County became a contract. Appellants urge that such a contract is invalid because it amounts to a delegation of legislative authority. They rely on the case of Bowers v. City of Taylor, 16 S.W.2d 520 (Tex.Com.App.), holdings approved. In that case the city had closed a street for a period of 15 years at a point where it crossed a railroad right-of-way. This was done pursuant to an agreement with the railroad company giving the company the exclusive use of the part closed. The court did hold this was an attempt to contract away its legislative function and the agreement was invalid. On motion for rehearing the court stated its holding was based on the fact that the contract bartered legislative powers and that it violated the constitutional inhibition against irrevocable or uncontrollable grants of privilege. In the case a private corporation was involved.

Here we have two public bodies each of which is a trustee for the public in the construction and maintenance of roads. The subject of the contract here was the opening, construction and maintenance of the San Felipe extension. It is true that the term "control" is used. We think that term is used in the sense that control was conferred on the County to the extent necessary for it to construct, maintain and take the extension into the County Road System. It was necessary to take the extension into the road system so the County could make expenditures. It is true as appellants urge that one construction to be given the term is full and absolute control. However, it is also susceptible to the construction we have above stated. Where one possible construction will invalidate an agreement and another reasonable construction will sustain it, that construction will be given which will uphold the agreement. The reason is that it is most reasonable to assume the parties intended to make a valid agreement. City of El Campo v. South Texas National Bank, 200 S.W.2d 252 (C.C.A.—San Antonio, writ ref.).

Here, too, it is noticed that the agreement provided the extension should be within the lines "set in accordance with the plat attached to this ordinance and made a part hereof . . ." This was an exercise by the City of its authority to determine the location of streets. It also evidences an intent that the term control was used in the sense that control was given to the extent necessary to construct and maintain. The construction and maintenance of streets is a proprietary function.

The City has authority to contract with the County for the financing or improvement of roads within the City that tie into County roads. City of Breckenridge v. Stephens County, 120 Tex. 318, 40 S.W.2d 43, opinion approved; Hughes v. Harris County, 35 S.W.2d 818 (C.C.A.—Galveston, n. w. h.); Smith v. Cathey, 226 S.W. 158 (C.C.A.—Dallas, n. w. h.); Cannon v. Healy Construction Co., 242 S.W. 526 (C. C.A.—Texarkana, writ ref.). While these cases actually involved only financing of city streets that connected with county roads, we have no doubt that the language used and the rationale would authorize counties, with the consent of cities, to construct and maintain designated streets in the cities that tie into a county road, thus becoming an integral part of the county road system.

We, therefore, hold the contract was a valid one.

■ Appellants urge that even if the contract is valid it did not purport to give the County the right to condemn. It cites the case of International Bridge and Tramway Co. v. McLane, 8 Tex.Civ.App. 665, 28 S.W. 454. That was a case where the Tramway Company contended its charter authorized it to construct a bridge across the Rio Grande River at Laredo and to collect tolls. It had been authorized by an ordinance of the City of Laredo to construct the bridge and collect tolls. It asserted the right to condemn to acquire sites necessary for improvement. The court merely held the right of eminent domain was an attribute of sovereignty and the legislature had not conferred such right on corporations such as the Tramway Company.

Here, as we have previously held, the Harris County Road Law and Article 3264a have conferred the right of eminent domain on Harris County for acquiring property for road purposes.

■ Appellants further contend the option on the part of the County to extend its rights for the second ten year period was not timely exercised. It was not exercised within ten years after the ordinance was passed, but it was exercised within ten years after it was accepted by the County. The facts we have recited above show it was intended to be effective from the date of acceptance by the County. Appellants base their contention on the fact that the ordinance was passed in August, 1955, and gave a ten year period "from the date hereof." However, on the ordinance was a place for acceptance by the County. The County must accept before it was bound by the obligations it was to assume. It may be said there was an ambiguity as to the effective date. If this is so, all parties have, as shown by the facts recited above, construed the effective date as September 29, 1955, the date of acceptance by the County.

■ We also hold Piney Point was estopped from withdrawing its consent. Before it had attempted to do so on July 10, 1969, the County had set the building lines, purchased right of way from Kinkaid School for $11,619.40 and additional right of way for $29,664.05. All this was in Piney Point. Further, a subdivider had, in Piney Point, built 998 feet of the extension under the supervision of the County and according to its specifications. Less than one-half of the extension in Piney Point remained to be constructed.

■ We cannot adopt appellees' construction of Article 6674n–2 that the land condemned need only be necessary or convenient to a road that is or will be a link in a county road. We construe the article to mean that the land, right of way, or easement sought to be condemned must be a portion of the road which itself forms or will form a link in the County Road System or a State highway. After Memorial Drive was dropped from the County Road log in 1960 it ceased being a County road. This would leave the extension joining a County road at only one end. It would not constitute a link joining to county roads as

contemplated by the statute. County of Jim Wells v. Cook, 410 S.W.2d 325 (C.C.A. —San Antonio, n. w. h.); State v. State Road Commission, 64 S.E.2d 28 (W.Va. Sup.); City of Independence v. Montgomery County, 140 Kan. 661, 38 P.2d 105; Bridgman v. Town of Hardwick, 67 Vt. 132, 31 A. 33.

As previously shown, we think the Harris County Road Law sufficed to confer the right to condemn.

All points not specifically discussed are overruled.

The motion for rehearing is granted and the judgment of the trial court is affirmed, Associate Justice Coleman concurring.

## ON MOTION FOR REHEARING

COLEMAN, Justice (concurring).

Appellees have filed a motion for rehearing in which they urgently contend that we were in error in our disposition of this case, and, in particular, point to the provisions of the Harris County Road Law in support of their position. This Act, H. B. No. 282, Acts of the 33rd Leg. 1913, Ch. 17, p. 64 et seq., contains certain provisions pertinent to this case, a summary of which follows:

Sec. 1. The Commissioners Court shall have control of all roads "heretofore laid out or constructed, or that may hereafter be laid out or constructed by Harris County, or under its direction."

Sec. 12. (Condemnation power granted.)

Sec. 22. "The Commissioners Court shall have the right to lay out roads to a width of not more than 120 feet, provided same shall connect with main roads leading into the City of Houston."

Sec. 29. "Whenever in the Act, or any general law, the word 'Road' is used, the same is hereby defined to mean in so far as Harris County is concerned, all road

beds, ditches, drains, bridges, culverts and every part of every road, whether inside or outside of any incorporated city or town in Harris County, or not."

Sec. 33. "The provisions of this Act are, and shall be, held and construed to be cumulative of all General Laws of this State, on the subject treated of in this Act, when not in conflict therewith, but in case of such conflict this Act shall control as to Harris County."

This Act was amended by H.B. No. 579, Acts of 50th Leg., Ch. 205, p. 358—effective May 14, 1947.

Sec. 6. "Sec. 12 of Acts, 1913, Regular Session, Special Laws, Page 64, Ch. 17, relating to the exercise of the power of eminent domain is hereby repealed. . . . Eminent domain proceedings shall be governed by the General Statutes authorizing counties to institute and maintain such proceedings."

Sec. 12. Harris County Road Law amended by adding Sec. 31–C. "Hereafter, in acquiring right of ways for roads in Harris County, the Commissioners Court shall determine the width of the right of way required, and establish the lines and alignment of the road." (Field notes of such roads must be filed with auditor and recorded on road log.)

The Harris County Road Law must be construed to authorize the Commissioners Court to lay out roads whether inside or outside of incorporated cities or towns if they connect with main roads leading into the City of Houston. The proposed road is a continuation of a main road leading into the City of Houston, and connects with Memorial Drive and Voss Road which are also main roads leading into that city. Sections 22 and 29, Acts of the 33rd Leg., 1913, Ch. 17, p. 64. Section 33 of the same Act provides that the provisions of this Act will control as to Harris County when in conflict with the general laws of the state.

In 1955, when Harris County and the City of Piney Point entered into the contract in question here, Article 1146, V.A.T.S., was applicable to the City of Piney Point. It provided that the Board of Aldermen should "have and exercise exclusive control over the streets and alleys . . . within the corporate limits; provided that with the consent of the Board of Aldermen, where streets are continuations of public roads, the Commissioners Court shall have the power to construct bridges and other improvements thereon which facilitate the practicality of travel on said streets."

In 1957, when Piney Point became a general law city Article 1016, V.A.T.S., became applicable, and it provides that such a city "shall have the exclusive control and power over the streets, alleys . . . and highways of the city or town . . . ."

In Adams v. Rockwall County, 280 S.W. 759 (Tex.Com.App., judgment adopted), the court considered the local road law for Rockwall County in relation to the general statutes granting cities the exclusive control over their streets. There the court said:

"It becomes manifest, therefore, that the local road law must be given an effect which would repeal (more accurately speaking, introduce an exception into) the terms of what is now article 1016, R.S.1925, before it can be said that a county may assume such power over highways, actual or proposed, within an incorporated city as that now claimed by Rockwall county. For present purposes, we assume the power of the Legislature, through a local or special act, to repeal (pro tanto) or to ingraft upon the general law an exception . . . ."

The court stated that a repeal by implication would not be presumed, and held that there was no irreconcilable conflict between the general laws and the special act under consideration. It then held that the special act did not authorize the county to construct the road in question within the limits of the City of Royse.

The court also stated that the general law was reenacted in 1925, and thus was the most recent expression of the legislative will, and that this circumstance, together with the legislative intent on the subject gathered from other statutes, would require a holding that the general law must prevail in the event an irreconcilable conflict did appear.

Here we have a clear expression of the legislative intent that the Harris County Road Law should prevail over the contrary provisions of general law. At least since 1895 the general law of this state granted cities exclusive control over their streets and highways. Art. 419, Rev.St.1895; Ex Parte Drake, 55 Tex.Cr.R. 233, 116 S.W. 49 (1909). The Harris County Road Law was enacted in 1913 and amended in 1963, and on several previous occasions. It is a special law applicable only to Harris County roads and as such controls general laws on the same subject. Gabbert v. Brownwood, 176 S.W.2d 344 (Tex.Civ.App.—Eastland 1943, writ ref.).

In American Surety Co. of New York v. Axtell Co., 120 Tex. 166, 36 S.W.2d 715 (1931, opinion adopted), the court quoted from 36 Cyc. Par. 10, p. 1165, as follows:

" . . . An amended act is ordinarily to be construed as if the original statute had been repealed, and a new and independent act in the amended form had been adopted in its stead; or, as frequently stated by the courts, so far as regards any action after the adoption of the amendment, as if the statute had been originally enacted in its amended form. . . ."

In Culver v. Miears, 220 S.W.2d 200 (Tex.Civ.App.—Eastland 1949, writ ref.), the court said:

" . . . Under the rules of statutory construction, statutes in pari materia should be construed together and where one statute deals with a subject in gener-

al terms and another deals with a part of the same subject in a more detailed way, the two should be harmonized, if possible. However, if there is any conflict the latter will prevail, regardless of whether it was passed prior or subsequent to the general statute, unless it appears that the Legislature intended to make the general act controlling. . . ."

While the court in Adams v. Rockwall County, supra, pointed out reasons which might well be persuasive that the better policy is to forbid a county from interfering with a city in its control of its streets, effective planning of major streets is undoubtedly hindered by lack of power in any governmental body to form enforceable overall plans. In any event in Board of Insurance Com'rs. v. Guardian Life Ins. Co., 142 Tex. 630, 180 S.W.2d 906 (Tex. 1944), we are admonished:

"Where the language of a statute is unambiguous, and its meaning is clear, the statute must be given effect according to its terms, and 'we are not at liberty to speculate upon the intention of the Legislature in its enactment.' Vaughn v. Southwestern Surety Ins. Co., 109 Tex. 298, 206 S.W. 920, 921. The proper function of the court is to declare and enforce the law as made by the Legislature without regard to the policy or wisdom of the act nor to the disastrous or mischievous results it may entail. Gaddy v. First Nat. Bank of Beaumont, 115 Tex. 393, 283 S.W. 472."

It is urged that because these general statutes gave exclusive control of the streets within a city to the governing body of the city, and because questions such as determining the location of a street is a governmental function, the city lacked authority to enter into the contract.

The Harris County Road Law authorized the Commissioners Court to lay out roads within the city limits of cities in Harris County (with the possible exception of the City of Houston), and granted the Commissioners Court "control" of roads so laid out. Because of the provisions of the Harris County Road Law the agreement with the City of Piney Point was unnecessary. This Act is Constitutional and a valid exercise of the legislative power. Tarrant County v. Shannon, 129 Tex. 264, 104 S.W.2d 4 (1937). The County is authorized by its provisions to lay out and construct the proposed extension of San Felipe Road.

Nevertheless in 1955 the County and the City entered into a contract whereby the City granted to the County the right and authority to extend San Felipe Road "to a point within the town limits of Piney Point Village from its intersection of Buffalo Rayou to the intersection of Memorial Drive" provided that the "lines of said extension are set in accordance with the plat attached to this Ordinance and made a part thereof, . . . " The contract granted the County, for a period of ten years with an option to extend same for an additional ten years, "the absolute right and authority to widen, to set building lines, to construct, to improve, maintain, control and take into the County Road System, all of that part of San Felipe Road, extension lying within the town limits of Piney Point Village, . . . "

It would appear that when this contract became effective by the acceptance of Harris County, that part of San Felipe Road lying within the boundaries of the Village was laid out and designated by the ordinance of the Village.

Under the general law the Commissioners Court has the authority to expend its funds for the improvement of city streets where such streets "form integral parts of county roads or state highways, when such improvements are made without conflicting with the jurisdiction of the municipality, or with its consent or approval." City of Breckenridge v. Stephens County, 120 Tex. 318, 40 S.W.2d 43 (1931). The court also said:

". . . The commissioners' court has the right to expend county road bond

funds on county roads and highways in any part of the county. If a street of an incorporated town or city forms a connecting link in the county road or state highway, we think it is a county road within the meaning of the statutes to the extent that county funds may be spent for the improvement thereof. Of course, the town or city governing board primarily has paramount jurisdiction of the streets and highways thereof, and the commissioners' court would have no authority to improve streets or highways within municipalities in conflict with the jurisdiction of the city to improve the same. . . . "

The court held that the city was entitled to enforce a contract made with the county whereby the county agreed to pay the cost of paving a city street which was a "connecting link and integral part of a county road and state highway." The court expressly approved Cannon v. Healy Construction Co., 242 S.W. 526 (Tex.Civ.App. —Texarkana, 1922, writ ref.), and quoted from Smith v. Cathey, 226 S.W. 158 (Tex. Civ.App.—Dallas, 1920). In the case last cited the court said: ". . . But where the city or town does not deem it proper to exercise such jurisdiction, and does not object to the county keeping up such road or street, the county has the right to do so."

By the contract between Harris County and Piney Point Village, the Village agreed to grant to the County the right to build and maintain the road in consideration of the agreement of the County to maintain it in good condition without cost to the Village. Both the County and the Village were authorized to enter into the contract pursuant to their respective powers to lay out and construct streets and roads. The manner in which the Village exercised its power to construct streets in this instance was a matter within its discretionary powers. The purpose of the contract was to provide for the construction and maintenance of the street, and the power of control granted to Harris County should not be construed to grant rights be-

yond that necessary for the accomplishment of that purpose. So construed the contract did not involve the contracting away of governmental powers on the part of the Village. A reasonable construction of the contract consistent with its validity must be adopted in preference to a different construction which would render it invalid.

Section 12 of the Harris County Road Law as originally enacted gave the County the right to condemn land, when it became necessary for the purpose of opening or constructing a public road, in the same manner that a railroad company might condemn land for a right of way. The right to open roads by a jury of view as authorized by general law was preserved. After the question of the power of counties to condemn land for right of way purposes under Article 3264a, R.C.S., had been clarified by the opinion of the Supreme Court in Tarrant County v. Shannon, supra, the Road Law was extensively revised in 1947 by the 50th Legislature and Section 12 was repealed, and it was provided that eminent domain proceedings shall be governed by the general statutes authorizing counties to institute and maintain such proceedings. H.B. No. 579, Acts of the 50th Leg., Ch. 205, p. 358.

Section 12 of the original version of the Harris County Road Law, when the definition of "Road" contained therein is considered, authorized the condemnation of land for right of way "whether inside or outside of any incorporated city or town in Harris County." It appears that the amendment of 1947 was intended to expand the authority of the County with reference to condemnation by eliminating restrictions applicable to railroad companies rather than to restrict that authority. It is also probable that the legislature intended by specifically granting the power to condemn, in view of the fact that the County already had that power under general law, to make that power co-extensive with the right to lay out and construct roads through incorporated cities and towns

which was granted Harris County by the Act. Aransas County v. Coleman-Fulton Pasture Co., 108 Tex. 216, 191 S.W. 553 (1917).

In Benat v. Dallas County, 266 S.W. 539 (Tex.Civ.App.—Dallas, 1924, writ ref.), the opinion reads:

" . . . except in cases coming within the scope of some general or special statute in which authority is explicitly conferred, counties are without authority to lay out or control streets and highways of the incorporated cities and towns, or to have property condemned for such purposes. State v. Jones, 18 Tex. 874; Norwood v. Gonzales County, 79 Tex. 222, 14 S.W. 1057; Echols v. State, 12 Tex.App. 616; Reuter v. State, 43 Tex.Cr.R. 572, 67 S.W. 505; Cowand v. State, 83 Tex.Cr.R. 298, 202 S.W. 961."

The cases cited support the holding that counties are without authority to lay out or control streets and highways of incorporated cities. While these cases do not deal with the right of counties to condemn right of way within incorporated cities, a denial of that right would follow where the county had no authority to lay out or construct a street. While a writ of error was refused in this case, it was acted upon in 1925 when the refusal of a writ did not necessarily mean approval of the opinion.

The county court was held without jurisdiction in a condemnation action instituted by Rockwall County to condemn right of way for a road within the limits of the City of Royse. Adams v. Rockwall County, 280 S.W. 759 (Tex.Com.App.1926, judgment adopted). This case was decided on the basis that the special law upon which the County relied did not expressly or by implication, repeal or ingraft an exception upon the general laws granting to cities the exclusive right to control their streets. It is clearly the opinion of the court that the County had no right to condemn under the general law because the streets within a city are within its exclusive control. In

this case the judgment, not the opinion, was adopted by the Supreme Court of Texas.

Both of these cases must be reviewed in light of the opinion of the Supreme Court in City of Breckenridge v. Stephens County, 120 Tex. 318, 40 S.W.2d 43 (1931), where the court held that Stephens County was authorized to spend county road bond funds for the improvement of streets within incorporated towns, "where such streets form integral parts of county roads or state highways, when such improvements are made without conflicting with the jurisdiction of the municipality, or with its consent or approval." In this case the court held that a county could be required to pay part of the costs of the construction of a city street where it formed an integral part of a state highway and it had contracted to do so. The court said: " . . . under the Constitution and laws of this state the county in the instant case had the right to make the improvement in question here. Of course, if the county had the right to make the improvement, it had the right to make the contract so to do."

The Village had the right to improve its streets, so it had the right to contract with the County to improve the street. The County had a right to enforce the contract to the same extent as did the Village. Since the County has the right to construct the proposed road, the decisions in Benat and Adams restricting the power of counties to condemn property for right of way are not applicable. Art. 3264a, V.A.T.S., grants counties the power to condemn in general terms. There is no specific statutory provision restricting the right of a county to condemn land within the limits of an incorporated city or town. In all cases where a county has the right to lay out and construct roads, it has the power to condemn right of way for that purpose.

On November 3, 1955, Harris County set the building lines and defined the right of way for the extension of San Felipe in accordance with the agreement. At this time

the extension connected Voss Road and Memorial Drive, both County roads. In 1963 Harris County purchased a portion of the right of way within the Village. With the full concurrence of the Village Harris County exercised its option to extend the agreement on September 23, 1965. On August 4, 1967, the County bought additional right of way. On July 10, 1969, the County received a letter from the Mayor of Piney Point written at the direction of the Council advising the County that the agreement to permit the County to construct the extension of San Felipe was void, in effect withdrawing their consent. Prior to that time a subdivider had constructed 998 feet of the street under the supervision of the County, and less than one-half of the proposed improvement within Piney Point remained to be constructed. The County had spent large sums of money extending San Felipe, within the City of Houston, from the east to Voss and had made financial arrangements for segments of the right of way westward from Voss to the corporate limits of Piney Point, although this right of way had not been actually purchased. It appears, therefore, that prior to the attempt on the part of Piney Point to withdraw their consent, the County had commenced operations under the contract and had expended large sums of money in reliance on the agreement. Thereafter the County continued the project and completed the street to the city limits of Piney Point. The County directed the engineer to secure the remaining right of way needed in Piney Point and authorized condemnation proceedings.

The extension of San Felipe through Piney Point was a part of an extensive and expensive program of road construction. The benefits anticipated for the citizens of the county from the large expenditures made will be substantially curtailed if the program cannot be completed. It is apparent that Piney Point does not intend to complete the construction of the road. It has asserted its jurisdiction for the purpose of preventing the completion of the road.

In effect it seeks to abandon part of a road which has been designated, but not built. Since Piney Point is not asserting its jurisdiction to improve the street there is no conflict of jurisdiction between the City and County as contemplated by City of Breckenridge, supra. In any event the trial court correctly concluded that the City had no right to rescind the agreement with Harris County; that the City is estopped from rescinding the agreement; and that the City was guilty of laches and did not come into court with clean hands. Under these conclusions the City was not entitled to an injunction.

At the time the agreement at issue was made and at the time the County purchased the first segment of right of way in Piney Point for the extension of San Felipe, and at the time the County defined the right of way for that road, it unquestionably formed a connecting link in the county road system. It ran between two roads "heretofore laid out or constructed" by Harris County. Section 1 of the Harris County Road Law provides that the County "shall have control of all" such roads. The fact that county roads become city streets does not mean that they are no longer parts of the county road system. With the consent of the city the county could resume the use of county funds for the maintenance of such roads. City of Breckenridge v. Stephens County, supra.

Art. 6674n–2, V.A.T.S., grants counties the right of eminent domain within the limits of incorporated cities "with prior consent of the governing body of such municipality," to acquire land, rights of way or easements where the land is, in the judgment of the Commissioners Court, "necessary or convenient to any road which forms or will form a connecting link in the county road system or a connecting link *in a* state highway." The language used contemplates that the land to be condemned must form an interior link in the county road system as contrasted with an addition to the system connecting at one end only. The Commissioners Court of

Harris County has found that the proposed extension of San Felipe is necessary or convenient to such a road. This constitutes a recognition of the fact that Memorial Drive is a part of the County Road System. The fact that it was removed from the County Road Log for maintenance purposes does not mean that it is no longer a part of the system. See Acts of 58th Leg.—Regular Session, Ch. 369, p. 940. At the time the Village gave its consent to the construction of the road by Harris County, it impliedly agreed that the County should have its consent to take such action, including condemnation, as might be necessary to secure the needed right of way. Harris County was authorized to condemn the land in question by Art. 6674n–2, V.A.T.S.

For the reasons stated I concur in the action of the court in granting the motion for rehearing, and in affirming the judgment of the trial court.