

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

June 22, 1977

Honorable Henry Wade                    Opinion No. H- 1018
District Attorney
6th Floor, Records Building             Re: Whether Dallas County
Dallas, Texas 75202                     may maintain city streets.

Dear Mr. Wade:

You have requested our opinion regarding the authority
of Dallas County to construct and maintain city streets
under general law and the Dallas County Road Law, an uncodi-
fied special law, enacted in 1941 and subsequently amended
three times.  Acts 1941, 47th Leg., ch. 458 at 729; Acts
1949, 51st Leg., ch. 311 at 579; Acts 1951, 52nd Leg., ch.
328 at 563; Acts 1955, 54th Leg., ch. 43 at 57.  In 1951,
the Attorney General ruled that certain of its provisions
were unconstitutional, while other provisions were validly
enacted under article 8, section 9 of the Texas Constitution,
which authorizes local laws for the maintenance of public
highways.  Attorney General Opinion No. V-1315 (1951).  The
valid portions, "standing alone, form a complete and enforce-
able piece of legislation."  Id. at 11.

You first ask whether the Dallas County Road Law requires
that county roads be maintained under one consolidated road
and bridge district.  Nothing in the statute appears to require
this result.  Section 24, which makes the act "cumulative of
all General Laws of this State on the subject treated of and
embraced in this Act when not in conflict herewith," thereby
incorporates the provisions of article 752c, V.T.C.S., which
permits a county to "establish one or more road districts."
In our opinion, therefore, the Dallas County Road Law does
not require that the roads of Dallas County be maintained
under one consolidated road and bridge district.

You next ask whether the Dallas County Road Law limits
your general law authority to work on the streets of a muni-
cipality.  Since the special law is cumulative of general
laws on the subject, it does not limit the county's authority
under general law.  Sec. 24.  Nor do we believe it adds to

your general law authority to work on city streets. Section 1 of the special law grants the commissioners court power to build and maintain the public roads of Dallas County "so as to facilitate travel between the communities thereof." See also Acts 1951, 52nd Leg., ch. 328, § 25a at 563. The Dallas County Road Law defines "road" and "highways" to include, "bridges, culverts, roadbeds, ditches, drains, and every part of a road or highway as such terms are commonly understood. . . ." Sec. 22. By contrast, the Harris County Road Law includes in its definition of road "every part of every road, whether inside or outside of any incorporated city or town in Harris County. . . ." Acts 1913, 33rd Leg., ch. 17, § 29 at 70 (Local and Special Laws). This language authorizes Harris County to build a road through a general law city, over the city's objection. City of Piney Point Village v. Harris County, 479 S.W.2d 358 (Tex. Civ. App. -- Houston [1st Dist] 1972) app. dism'd, 410 U.S. 976 (1973). In the absence of such express authority to build roads through cities under the special Road Law, we believe Dallas County may work on only those city streets that it has general law authority to work on. Adams v. Rockwall County, 280 S.W. 759 (Tex. Comm'n App. 1926, jdgmt adopted); Benat v. Dallas County, 266 S.W. 539 (Tex. Civ. App. -- Dallas 1924, writ ref'd).

We turn to your questions regarding your general law authority to build or maintain city streets. Article 1016, V.T.C.S. provides that general law cities shall have "the exclusive control and power over the streets, alleys, and public highways of the city." See also V.T.C.S. art. 1146, § 2. Home rule cities may also exercise exclusive jurisdiction over their streets if they adopt appropriate charter provisions. V.T.C.S. art. 1175, §§ 12, 16; see City of Corpus Christi v. Unitarian Church of Corpus Christi, 436 S.W.2d 923 (Tex. Civ. App. -- Corpus Christi 1968, writ ref'd n.r.e.); Miller v. Uvalde Co., 20 S.W.2d 403 (Tex. Civ. App. -- San Antonio 1929, writ dism'd). It is well established that this authority prevails over the right conferred upon the commissioners court by article 2351, V.T.C.S., to "[l]ay out and establish, change and discontinue public roads and highways," and to "[e]xercise general control over" them. The incorporation of a city generally removes the power of the commissioners court to lay out and regulate roads within that city's boundaries. Harrison County v. City of Marshall, 253 S.W.2d 67, 69 (Tex. Civ. App. -- Fort Worth 1952, writ ref'd). This rule has been modified by judicial decisions and Attorney General Opinions which have upheld a limited authority of the commissioners court over city streets, provided the city consents and provided further

that such streets form an "integral part" of the county road system or a "connecting link" therewith. City of Breckenridge v. Stephens County, 40 S.W.2d 43, 44 (Tex. 1931); Hughes v. County Commissioners Court of Harris County, 35 S.W.2d 818 (Tex. Civ. App. -- Galveston 1931, no writ); Attorney General Opinion WW-1410 (1962). The commissioners court may spend county funds to improve city streets as long as certain circumstances exist. Several of your questions are directed at determining when the requisite circumstances exist.

You ask how to determine whether a city street forms "an integral part of the county road system" or a "connecting link" so that the county may spend funds to improve it. In ordinary usage, "integral" means a part necessary or essential to complete the whole. Matczak v. Secretary of Health, Education and Welfare, 299 F.Supp. 409, 413 (E.D.N.Y. 1969). In Attorney General Opinion V-261 (1947) we indicated that such streets form a continuation of a county road and have been designated by the county as part of its road system. See also Attorney General Opinion O-1190 (1939). Thus, we believe the county may extend an existing county road through a city or complete any gaps within city limits, providing, of course, the city consents. See Hughes v. Commissioners Court of Harris County, supra at 823; Tex. Att'y. Gen. Op. (To Honorable Marshall Spoonts, Feb. 2, 1915), 1914-1916 Tex. Att'y Gen. Bien. Rep. 728.

"Connecting link" has been defined in another jurisdiction as the city streets that actually connect two county highways without the need to travel over any other highway except the city street in question. City of Independence v. Board of County Commissioners of Montgomery County, 38 P.2d 105 (Kan. 1934). A Texas court relied on this definition to construe article 6674n-2, V.T.C.S., which authorizes counties to condemn land within municipalities when needed for a road that forms a "connecting link" in the county road system. City of Piney Point Village v. Harris County, supra at 367. In our opinion, the same definition applies to the term "connecting link" in the context of the county's general law powers to work on city streets. See Hughes v. County Commissioners of Harris County, supra at 819; Attorney General Opinion V-261 (1947). Thus, a county may maintain streets within a city that provide a route for traveling from one county highway to another.

The terms "integral part" and "connecting link" have sometimes been used interchangeably. See City of Breckenridge v. Stephens County, supra. In our opinion, this usage indicates that a connecting link becomes part of the county road system. See City of Piney Point Village v. Harris County, supra. The use of the term "connecting link" as well as

"integral part" in the opinions emphasizes that the county may build a road through a city in order to link two completed roads, as well as to extend or complete a single road. Of course, the county lacks authority under general law to spend county funds for improvement of city streets which do not form an integral part of the county road system or connecting links in it. Attorney General Opinion No. V484 (1948).

You inquire whether Dallas County may maintain an existing city street that forms a connecting link with two county roads. In Attorney General Opinion WW-1401 (1962) this office said that the county could pave or maintain city streets that form a connecting link with the county road system, provided, of course, that the city consents. You also ask whether Dallas County may construct a new county road within the city limits. The county has authority to engage in new construction within city limits, Edwards v. Dallas County, 232 S.W.2d 262 (Tex. Civ. App. -- Dallas 1950, no writ), and to pave unpaved streets, Smith v. Cathey, 226 S.W. 158 (Tex. Civ. App. -- Dallas 1920, no writ); Attorney General Opinions M-561 (1970); WW-1401 (1962), provided the newly constructed road will form an integral part of the county road system, or a connecting link. Whether a new road wholly within the limits of an incorporated city would bear the appropriate relationship to existing county roads depends upon the surrounding facts.

You ask whether the county may build or maintain a city street that connects with two county roads on a right-of-way owned by the municipality. We find no requirement in the cases or opinions that the county own the right of way of a city street as a condition to paving or maintaining it. See City of Breckenridge v. Stephens County, supra; Attorney General Opinions H-345 (1974); M-561 (1970); WW-1401 (1962); V-261 (1947).

You ask whether Dallas County may, pursuant to articles 2356, 2357 and 6794, build a new bridge within a city, on a street that has never been a county road. You also ask whether the county may maintain existing bridges located within a city that were not built by the county and are not located on a county road. Article 2356, enacted in 1895, provides in part:

> Said [commissioners] court may erect
> bridges within the corporate limits of
> any city or town to the same extent and
> under the same conditions now prescribed
> by law for the construction of bridges
> outside the limits of any city or town.

Acts 1895, 24th Leg., ch. 107 at 164.  It also provides for co-operation between the commissioners court and the city to build a bridge within the city limits.  Another statute on the same subject was passed at the same legislative session, and must be harmonized with article 2356.  Martin v. Sheppard, 201 S.W.2d 810 (Tex. 1947).  Article 1146 also enacted in 1895, provides as follows:

> The board of aldermen shall:
>
> . . . .
>
> 2.  Have and exercise exclusive control over the streets, alleys and other public places within the corporate limits; provided, that, with the consent of the board of aldermen, where streets are continuations of public roads, the commissioners court shall have power to construct bridges and other improvements thereon which facilitate the practicability of travel on said streets.

Acts 1895, 24th Leg., ch. 63 at 89.  Since these two statutes were passed at the same session of the Legislature and cover the same subject matter, they should be construed together. Board of School Trustees of Young County v. Bullock Common School Dist. No. 12, 55 S.W.2d 538 (Tex. Comm'n. App. 1932, jdgmt aff'd).  We believe that the county's bridge building authority under article 2356 is limited by the requirements in article 1146 that it build bridges within corporate limits only as continuations of public roads, and only with the city's consent.  Thus, article 2356 does not authorize the commissioners court to build bridges on city streets unless they form part of the county road system.  See Reports of the Attorney General 1914, 1916 at 728 (distinguishing "roads" from "streets").  Although the limitations of article 1146 apply only in the case of general law cities, see Leach v. Coleman, 188 S.W.2d 220, 229 (Tex. Civ. App. -- Austin 1945, writ ref'd w.o.m.), we do not believe that the county has greater power under article 2356 to build bridges in home rule cities than it does in general law cities.  Home rule cities may exercise exclusive dominion over their streets and may reject county proposals with respect to the development of streets.  V.T.C.S. art. 1175, §§ 12, 16; Harrison County v. City of Marshall, supra.

Article 2357 requires the commissioners court to maintain any bridges it owns that are located within city limits. See City of Llano v. Wilbern, 152 S.W. 474 (Tex. Civ. App. -- Austin 1912, writ ref'd). The statute does not require that the county have built the bridge or that it be located on a county road. However, we express no opinion as to the county's authority to acquire a bridge which it did not build and which is not located on a county road. Article 6794, which gives the commissioners court general authority to build and repair bridges, does not specifically address its power to do so within city limits, and in our opinion, adds nothing to the statutes already discussed.

You inquire whether any of our foregoing answers would differ if the county used bond issue proceeds instead of road and bridge tax revenues to make the various improvements described. The county may expend road bond funds to improve city streets once all conditions are met, City of Breckenridge v. Stephens County, supra, and may also spend road and bridge tax funds for that purpose. Attorney General Opinion V-261 (1947). Funds from both sources may be used to build bridges. Tex. Const. art. 8, § 9; Aransas County v. Coleman-Fulton Pasture Co., 191 S.W. 553 (Tex. 1917).

You finally ask whether the Interlocal Cooperation Act, article 4413(32c) confers on Dallas County any power to maintain city streets that is not otherwise conferred by law. The Act permits local governments, including cities and counties, to contract to perform governmental services. The parties may agree to perform any governmental services "which all parties to the contract are legally authorized to perform. . . ." Sec. 4(b). The Act sets out other requirements for interlocal contracts. In our opinion, Dallas County may contract under the Act to maintain city streets which it is not authorized to maintain under other law. The county has legal authority to perform governmental services relative to street and road maintenance. V.T.C.S. art. 2351. Cities also have such authority, either under general law, V.T.C.S. art. 1016, or, in the case of home rule cities, under their charters. V.T.C.S. art. 1175, §§ 16-18. We do not believe that both parties must have authority under other law to maintain a particular street before they may contract with respect to that street under the Interlocal Cooperation Act. The Act expressly authorizes contracting for services such as fire protection, tax assessment, and the provision of water, which, as a practical matter, would seldom be performed in a place subject to the

jurisdiction of both contracting local governments.   In
Attorney General Opinion H-28 (1973) we decided that a con-
servation and reclamation district could contract with a home
rule city or other local government to receive certain fire
protection services.   The home rule city could thus contract
under the Interlocal Cooperation Act to provide fire protec-
tion services outside of its own territory.

Although we stated in Attorney General Opinion H-345
(1974) that the Interlocal Cooperation Act merely codified
existing general law with respect to the improvement of city
streets by the county, that statement must be limited to its
context.   Attorney General Opinion H-345 concerned an agree-
ment by which the county would maintain city streets forming
an integral part of the county or state road system.   Since
the county had adequate legal authority to undertake such a
project aside from the Interlocal Cooperation Act, that Act
added nothing to its legal authority in the particular case.
The county may, however, contract to maintain city streets
which are not part of the county road system, as long as it
follows the provisions of the Interlocal Cooperation Act.
Any services performed must be for an adequate consideration,
to avoid violating constitutional provisions against making
a gift of public funds.   Tex. Const., art. 3, §§ 51, 52; At-
torney General Opinions No. H-520 (1975); S-46 (1953).

## S U M M A R Y

The Dallas County Road Law does not re-
quire county roads to be maintained under
one consolidated road and bridge district,
nor does it limit the county's general
law powers to work on the streets of an
incorporated municipality.

Dallas County has authority under general
law to build or maintain city streets which
form an "integral part" of a county road
system or a "connecting link" therein if
the city consents.   The county need not own
the right of way in order to work on the
street.   The county may not build bridges
on a city street unless it forms part of
the county road system.   The county must
maintain bridges it owns within city
limits.   Where a county has legal autho-
rity to work on city streets, it may
spend either road bond proceeds or road and
bridge tax revenues for that purpose.

Under the Interlocal Cooperation Act, Dallas County may contract to work on city streets which do not form an integral part or connecting links in the county road system.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee