## HUGHES v. COUNTY COM'RS' COURT OF HARRIS COUNTY et al.

### No. 9576.

Court of Civil Appeals of Texas. Galveston.
Jan. 21, 1931.

Rehearing Denied Feb. 12, 1931.

Randolph & Hughes, W. L. Hill, and Thos. H. Stone, all of Houston, for appellant.

Sam Neathery, City Atty., William D. Orem, Asst. City Atty., both of Houston, for appellee City of Houston.

Kennerly, Williams, Lee, Hill & Sears, Geo. D. Sears, and Geo. A. Hill, Jr., all of Houston, for appellee County Com'rs' Court.

LANE, J.

We deem the following statement of the nature and result of the case sufficient to present the matters presented on this appeal:

The road or street referred to in the record as Yale street was formerly and originally a public road in Harris county, Tex., extending northwardly and southwardly. Subsequently and many years since that part of the road lying north of White Oak bayou fell within the limits of the city of Houston Heights, which was thereafter incorporated, and such part of the road became a part of a street in said city and was designated as Yale street. At a still later date the city of Houston extended its corporate lines so as to include the incorporated city of Houston Heights, and that part of said road lying north of White Oak bayou and within the limits of Houston Heights became Yale street in the city of Houston. Still later that portion of said road lying south of White Oak bayou fell within the corporate limits of Houston when such limits were extended, and since said last extension both those parts of the road that formerly were in Houston Heights and that south of White Oak bayou, are now Yale street in the city of Houston.

In October, 1929, both the city of Houston and the county of Harris, desiring to have Yale street improved, same being an extension of the aforesaid county road, entered into a written agreement whereby the county through its proper officers agreed that on proper estimates it would contribute the sum of $25,000 as its part of the cost of such improvements, and whereby the city of Houston agreed to pay the balance of the cost of such improvements over and above such sum as might be raised from assessments made against and paid by abutting property owners and railway companies; the costs assumed by the city amounting to approximately a quarter of a million dollars.

After such agreement was entered into, the city and county jointly advertised for bids for the aforesaid contemplated improvements of Yale street, to be submitted on the 20th day of August, 1930, wherein it was stipulated that such bids would be jointly opened and the contract jointly awarded in the name of the city of Houston and the county of Harris, in accord with the contract entered into between the city and county.

After such agreement and advertisement were made, the commissioners' court of Harris county, in conjunction with the city council of the city of Houston, began to lay out Yale street to a width of 120 feet, and the commissioners of the county set aside $25,000 out of the road and bridge funds of the county for the purpose of assisting in the contemplated improvements of Yale street, in accordance with the aforesaid agreement.

That part of the original road outside of the city and that part now known as Yale street within the city forms a connecting link between West Montgomery road, a county highway leading north and northwestward to the limits of Harris county, and on the south and east with Washington street and Waugh drive, which connects with the Washington county road, a cardinal highway leading northward toward the cities of Hempstead, Austin, Waco, Dallas, and others, and through Waugh drive with the Westheimer and Richmond roads, both of which are county highways leading to the west and south limits of Harris county, and with the old Spanish Trail, a cardinal highway leading toward San Antonio and important points west, and with the Galveston road, thus affording to the citizens of Harris county residing within and without the city of Houston direct interconnection between the county highways above mentioned without requiring, in most cases, the use of the more congested streets of the city of Houston, the use of which is fraught with danger, inconvenience, and delays to the citizens of both the city and county.

On the 1st day of August, 1930, after the calls for bids, as hereinbefore stated, were published, Taylor J. Hughes filed his petition praying for the issuance of an injunction to restrain the county commissioners' court of Harris county from entering into a contract with any contractor for the construction of the contemplated improvements of Yale street, above mentioned, which were proposed to be done under and in pursuance of the aforementioned agreement entered into between the city and county, whereby the county agreed to pay $25,000 as its part of the costs of said contemplated improvements.

The county answered, admitting the contract with the city of Houston, pleading it, asserting its right to have made the contract, also declaring its purpose to enter into a contract with a contractor on satisfactory bid for the paving of the portion of Yale street within the city of Houston, and of contributing the sum of approximately $25,000 toward the payment of the cost of improvement of said

street, either by paying it to the contractor or by paying it to the city of Houston, and announcing its purpose to carry out the improvement program unless restrained by the court. The city of Houston intervened and adopted the answer of the county of Harris.

Both defendant and intervener made general denial of the allegations of the plaintiff's petition.

On September 3, 1930, the cause came on for final hearing before Judge Allen B. Hannay of the 113th judicial district court, who, after hearing the pleadings and the evidence establishing the facts as stated in our preliminary statement, held that the law and evidence was with the defendant and intervener, denied the injunction prayed for, and rendered judgment accordingly. Plaintiff, Taylor J. Hughes, has appealed.

The trial Judge, upon request therefor, filed his findings of fact and conclusions of law, in which he found that the matters and things stated by us in our preliminary statement had been shown by the evidence, and that the law was with defendants. The facts as found by the court are in no wise challenged by appellant.

For cause of reversal of the judgment, appellant insists: First, that, under the Constitution and general laws of the state, counties of the state as governmental agencies have no jurisdiction whatever within the territorial limits of incorporated cities and towns, whether incorporated under the general laws or under the Home Rule Amendment to the Constitution (Const. art. 11, § 5), nor have they any dominion or control whatever over the street and public thoroughfares within such cities and towns; second, that the county of Harris has no dominion or control over such streets and thoroughfares under and by virtue of the special road law of Harris county enacted by the Legislature on the 5th day of March, 1913 (Loc. & Sp. Laws, c. 17); and, third, that Harris county has no lawful right of authority under the Constitution and general laws of the state, or under the special road law of Harris county, to expend county funds for street improvements within the corporate limits of the city of Houston, acting with or without the corporate sanction and co-operation of the city.

Considering the contentions of appellant in the order stated, we readily concede that Harris county can have no dominion or control whatever over any of the streets or public thoroughfares within the corporate limits of the city of Houston without the consent of the city, provided such streets or thoroughfares do not form a part, at least, of roads that have been or may be laid out or constructed by the county of Harris, or under its direction, or of roads existing by dedication prior to being taken into the limits of the city. But the case before us for consideration presents no such proposition. The facts as found by the trial court, which are unchallenged, show that the street or road involved was, prior to its being embraced within the limits of the city of Houston, a public road of the county of Harris, and they also show that the city has not only consented for the county to take part in the improvement of this street or road, but has by its contract with the county expressly invited the co-operation of the county in making such improvement. We are not, therefore, called upon to decide whether or not Harris county can, by virtue of the provisions of either the general laws of the state of Texas or the local road law of Harris county enter upon and make improvements on Yale street, and a public road of the county, without the consent of the city. No such question is presented to us by this appeal.

We agree with appellees that there are but two questions presented for our determination. Such questions are: First, Has the county of Harris the lawful authority to co-operate with the city of Houston to improve that part of such street and public road lying within the corporate limits of the city by expending county funds for such purpose? and, second, In view of the pleadings and evidence, did the trial court abuse its discretion in refusing the temporary injunction at the behest of a taxpayer, who, by reason of the proposed expenditure of public funds in the contemplated improvement, would suffer not exceeding 4 cents?

■ The county has, by virtue of the provisions of the general laws of this state, as well as by the Harris county local road law, the right to expend its funds in the improvement of a street within the corporate limits of a city which is also a public road of the county, especially so when such improvement is done with the consent and invitation of the city authorities.

■ The Legislature is specially authorized to pass laws, general and local, providing for the laying out, construction, and repairing of county roads, by section 2 of article 11, and section 9 of article 8, of our Constitution. Smith v. Grayson County, 18 Tex. Civ. App. 153, 44 S. W. 921; Ex parte Cooks, 61 Tex. Cr. R. 449, 135 S. W. 139.

■ In obedience to the mandate of article 8, section 9, of the Constitution, which we think self-enacting, the Legislature in 1911 and 1899 passed what is now articles 2351 and 2352 of our Civil Statutes. By article 2351, the commissioners' courts were authorized, among other things, to lay out and establish public roads and to exercise general control over all public roads in their respective counties, and by article 2352 such court is authorized to levy and collect taxes for road purposes and for the erection of public buildings, streets, sewers, etc. The right to levy and col-

lect taxes for certain purposes carries with it the right to expend the funds when so collected to carry out the purposes for which it was collected. It is immaterial to inquire whether the dominion and control over roads is given by statutes other than the articles named. Article 2352 clearly carries with it the implied power of the commissioners' courts to expend the road funds of their respective counties in the improvement of streets, especially such streets as constitute a part of a public road of the county, because by the provisions of the Constitution counties are given the right to levy and collect taxes for the improvement of both roads and streets. The Harris county special road law was validly passed in March, 1913 (Loc. & Sp. Laws 1913, c. 17), under section 9 of article 8 of our Constitution, which gave the Legislature power to pass special or local laws with respect to roads and highways. Under the provisions of the Harris county special road law, the commissioners' court of that county was given authority to improve roads theretofore laid out or constructed, or that might later be laid out by the county. In section 29 of such law, it is provided that the word "road" as used in the act is meant to embrace "every part of every road, whether inside or outside of any incorporated city or town in Harris county." And section 33 thereof provides the act shall be construed to be cumulative of all general laws of this state on the subject treated in the act, when not in conflict therewith, but, in case of such conflict, the act shall control as to Harris county.

We here substantially copy from the able brief of appellee Harris county as follows, which we adopt as our own:

"Aside from these plain constitutional and statutory warrants, which seem not to have been brought to the attention of the courts, it has been held from an early date that the counties have general authority and supervision of all roads; that cities have special power and control over their streets, but that where the city consents, the county may exercise control and supervision and expend its funds in aid of street improvement. Such has been the rule of decision laid down by the courts at an early date; such has been the advice of the attorney general, as evidenced in his written opinions for nearly twenty years.

"The Supreme Court of Texas, in the case of State v. Jones, 18 Tex. 874, recognized clearly that so long as there was no opposition or conflict between the city or county, with respect to road matters within a city, that the general authority of the county court over roads continues to exist within the city. In passing upon the question, Chief Justice Hemphill adopts the opinion of the lower court which is set out in full, and among other things, it is said:

" 'Until the town council acts under the authority conferred by its charter, the general authority of the county court over the subject matter continues to exist, and may be exercised. It is only when both bodies attempt to act in opposition to, and in conflict with each other, that the power and authority of one must cease and yield to that of the other, and in such a state of things, I am of the opinion that the authority of the county court must yield to that of the town council.'

"The question was squarely presented and just as squarely decided in the case of Smith v. Cathey (Tex. Civ. App.) 226 S. W. 158. In that case, a suit was brought to enjoin the Commissioners of Wood County from paying out of county funds a sum of money to be expended on the Jim Hogg Highway within the incorporated town of Winnsboro, and within Wood County. Even under the general law it was held that with the assent, express or implied, of the city of Winnsboro, the county had such power under the general law, and in the absence of a showing of conflict, or interference with the city's jurisdiction, the Court assumes as a matter of law that there was no conflict, and that the general power of the county should be given effect. They say:

" 'By subdivision 6 is given power to exercise control and superintendence over all roads and highways in the counties. This is subject to the powers usually granted to cities and towns over streets, etc., within its limits, when it chooses to take jurisdiction and the city or town sees proper to exercise such powers. But where the city or town does not deem it proper to exercise such jurisdiction, and does not object to the county keeping up such road or street, the county has the right to do so.

" 'From the organization of this state the commissioners' courts of the different counties have been given control and jurisdiction over roads and highways, and this has been restricted by the law in respect to incorporated cities and towns, which is still respected in those cases. In this case the town council makes no objection to the county taking this part of the highway under its control. When matters of this kind came before the court in a case reported in State v. Jones, 18 Tex. 874, the question of jurisdiction of the commissioners' court over roads and highways is first reported. In deciding that case the Supreme Court was content to adopt the opinion of the lower court, which says:

" ' "The county court does, it is true, possess a general jurisdiction coextensive with the limits of the county, to lay out and establish public roads and highways, but, as that jurisdiction is conferred by a general law which is applicable to every county in the state, it is at all times subject to be changed or modified by special laws, acting

upon the same subject in particular counties, or special localities," etc. "It has been said in argument that, if the law incorporating the town takes away from the county court the power to lay out and regulate roads within the town limits, and the council does not choose to exercise the power conferred upon it to lay out streets and highways, then the people of the county will be subjected to the inconvenience of having no road for travel or the transportation of their commerce through the town tract," etc. "Such a consequence, in my judgment, by no means follows. Until the town council acts under the authority conferred by its charter, the general authority of the county court over the subject-matter continues to exist, and may be exercised. It is only when both bodies attempt to act in opposition to and in conflict with each other that the power and authority of one must cease and yield to that of the other, and in such a state of things, I am of the opinion that the authority of the county court must yield to that of the town council."

" 'Under the law, when the city council has taken charge of the roads, streets, and alleys thereof, and keeps them in repair, for the benefit of its inhabitants, the county commissioners have no right to interfere with the council's jurisdiction, but in this case the city council has apparently failed to assume jurisdiction of this part of the highway, and, as we assume, has allowed the county commissioners to enter upon and take control without at least showing a disposition to oppose control by the county commissioners, which is apparently for the best interest of the citizens and with the consent of the town council.

" 'The Legislature in changing the highway and road laws did so for their betterment, but the general policy from the beginning, that the county commissioners should have general control over the roads, still remains.

" 'The proper authorities established the Jim Hogg highway along a thoroughfare in Winnsboro, and it was the duty of said commissioners to keep that portion in connection with the other parts of said highway, and it has jurisdiction in this instance.

" 'The bonds voted for this enterprise were placed in the county commissioners' hands for disposition, and it was legal for them to contract for the expenditure of said funds in the way they were so used. On several occasions the Attorney General of Texas in the course of his duty had occasion to pass upon such acts, and has declared the commissioners' court had the right to so expend such bonds, so said holding is persuasive, though not binding, and we so rule. Article 2241, Vernon's Sayles' Tex. Civ. Stats. 1914; State v. Jones, 18 Tex. 874; City of Llano v. Wilbern, Co. Judge (Tex. Civ. App.) 152 S. W. 477; Bluitt v. State, 56 Tex. Cr. R. 525, 121 S. W. 171; Williams v. Carroll (Tex. Civ. App.) 182 S. W.

29; City of Texarkana v. Telegraph Co., 48 Tex. Civ. App. 16, 106 S. W. 915; Aransas County v. Coleman-Fulton Pasture Co., 108 Tex. 216, 191 S. W. 553; Texarkana v. Edwards, 76 Ark. 22, 88 S. W. 862; State v. H. & T. C. Ry. Co. (Tex. Civ. App.) 209 S. W. 820; H. & T. C. Ry. Co. v. State, 95 Tex. 532, 68 S. W. 777.

" 'The county commissioners of Wood County, who had the control and supervision of roads and highways of said county, were apparently acting for the good of the public in this matter, and, it so appearing to us, we affirm the judgment of the lower court.'

"In the case at bar, it is not necessary to assume an absence of conflict. It appears affirmatively that there is entire accord. So that even if it be assumed that the power to exercise control over a road is a necessary predicate for finding authority to expend county funds in improving a street—which we have shown is not at all true—the law seems declared that such power does exist in the county; it is temporarily in abeyance so long as the city exercises its right, but even under the general law, where the city waives its right, the general power of the county is fully restored and it may assume control and superintendence over ways within the city.

"The authority to expend funds for the improvement of ways within a city is clearly expressed in the constitution, and the statutes, but these cases say that even in the matter of control, as opposed to the mere right to spend, the power of the county remains unimpaired so long as no conflict between it and the city appears. This, as the wise judge in the ancient case of State v. Jones remarks, is but a common sense solution of a proposition which contains no real contradiction, except those made by the conjuring touch of an adroit advocate."

In 1915, when Judge Looney, now associate justice of the Court of Civil Appeals at Dallas, was Attorney General of this state, and the present Chief Justice of our Supreme Court was his first assistant, counties were advised by opinions from the Attorney General's department that, where there was no conflict as to jurisdiction between a city and county as to jurisdiction, the county has the authority to expend funds on street and road improvements within city limits. In Reports of the Attorney General 1914, 1916, p. 728 et seq., is to be found an opinion upon the question here involved in reply to the following question:

"In the construction of our roads in this county, the greater portion of which has been done under a special road law, we find that our main roads are not connected up by reason of the fact that they pass through small incorporated towns in our county. The commissioners want to expend their money to build good roads in these incorporated towns, for instance we have a lateral road running

from Arlington to Grapevine,· both of these towns are incorporated, but by reason of the fact that the cardinal roads run through the center of these two places there is a hiatus of from one-half mile to a mile in each of the towns on the sub-cardinal road which have not been built. Our commissioners want to know if they have authority to construct those lateral roads after they strike the limits of these towns to connect with the cardinal and sub-cardinal roads."

In that opinion it is said:

"The general laws of the State must be looked to for the determination of the powers of your commissioners court to build the roads you have made inquiry about, because your special law is silent on this subject.

"Upon the whole case, we are of the opinion that your commissioners' court would not have authority, without the consent and acquiescence of the city councils of the cities or towns in the county, to construct roads within such cities or towns, unless it might be in a city or incorporated town 'in which from some cause there is not a de facto municipal government in the active discharge of their official duties.' We think, however, that with the consent of the city councils they might construct or co-operate in constructing roads through such towns or cities."

Again in 1919, when Chief Justice Cureton was the Attorney General, the Commissioners' court of Haskell county desired to levy a tax and pay the funds arising therefrom to pave the courthouse square "and all streets leading from the courthouse square connecting with public roads of the county." The Attorney General pointed out the general control of the county and the special control of the cities already adverted to, and, after quoting article 8, section 9, of the Constitution, giving counties the power to levy a tax "for the erection of public buildings, streets," etc., said that such section " * * * clearly indicated where the county has authority to do so, it may improve such streets as the county commissioners may determine. I would therefore advise you that the county commissioners may levy a special tax and pay the entire cost of the pavements of such portions of the courthouse square within an incorporated town or city as are used for highway purposes, and the streets leading therefrom and connecting with the county roads, providing they have first obtained the consent of the governing body of the city to do so." Reports and Opinions of Attorney General of Texas 1918 to 1920, p. 118.

It has long been recognized by all of our courts that opinions rendered by the Attorney General to other subdivisions of the government over a long period of years, the construction therein given to a law, while not binding on the courts, is highly persuasive upon them, and it has often been said by our courts that such opinions will not be lightly regarded.

In Harris county there are a dozen municipalities. If the contentions of counsel for appellant are correct, the county of Harris stands powerless to expend a dollar on roads through such municipalities. It would be compelled to leave gaps in important highways, even though it is anxious and able to improve the same out of its road fund, and even though the municipality concerned is willing and anxious it should do so.

It can hardly be seriously thought that the people in adopting the Constitution, or that the Legislature, intended to leave the public powerless to maintain its public roads which pass through incorporated cities. To our minds, every consideration of a sane public policy, as well as common sense, sustains the suggestion just made. The Legislature has conferred upon Harris county the right to improve its roads, or any part thereof, whether inside or outside of any incorporated city or town within the county. Special Road Law of Harris County, Acts 33rd Leg. p. 64.

Appellant cites Norwood v. Gonzales County, 79 Tex. 218, 14 S. W. 1057, and Benat v. Dallas County (Tex. Civ. App.) 266 S. W. 540, 541, as supporting his contention. Both of these cases were condemnation cases, and are not applicable to the facts of the present case. In Texas Midland v. Kaufman County Imp. District (Tex. Civ. App.) 175 S. W. 483, it is said: "All grants of governing authority conferring the right of eminent domain, are to be strictly pursued. The proposition is correct and universally conceded." Lewis on Eminent Domain, § 253.

In Benat v. Dallas County, supra, Judge Looney, speaking for the Dallas court, held that the county had no authority to condemn land in an incorporated city for road purposes, saying: "Appellees insist that under the doctrine of Smith v. Cathey [Tex. Civ. App.], 226 S. W. 158, decided by this court, opinion by the late Chief Justice Rainey, the proceedings in question are justified. We cannot accept this view. The Smith-Cathey Case did not involve the right of the county to lay out or control a street in the city of Winnsboro, or to condemn land for that purpose. The suit was by a taxpayer to enjoin the commissioners' court of Wood county from expending the county's funds in paving Main street in the incorporated city of Winnsboro. This court held in harmony with the doctrine of other cases, and also in harmony with rulings of the Attorney General, that the commissioners' court was authorized to expend county funds to pave the street, as the city authorities did not object. This is as far as the doctrine goes, and is as far, in our judgment, as it should be extended."

The weight of authority seems to indicate that under the general law the counties have

the constitutional and statutory power to expend their road funds in the improvement of their roads which pass through a municipality, and that they have the right to improve such roads, though they be streets of such municipalities, with the consent of the municipalities. State v. Jones, 18 Tex. 874; Smith v. Cathey (Tex. Civ. App.) 226 S. W. 158; Benat v. Dallas County (Tex. Civ. App.) 266 S. W. 540.

In addition to the reasons already expressed for an affirmance of the judgment of the trial court, we hold that, in view of the importance of the improvement made on Yale street, the large sum already expended widening the same, and the further large sum to be paid by the city for the completion of the contemplated improvements, and in view of the fact that appellant's loss, if any, by reason of the expenditure of $25,000 by the county in aid of the improvement would be practically 3 or 4 cents only, the trial court did not abuse his discretion in applying the well-settled rule of "balance of conveniences" and in denying the injunction prayed for.

For the reasons expressed, the judgment is in all things affirmed.

Affirmed.