# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

=============================

## ON MOTION FOR REHEARING

=============================

## NO. 03-05-00168-CV

**City of Laredo, Appellant**

**v.**

**Webb County, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. GV403943, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## O P I N I O N

We overrule appellee's motions for rehearing and rehearing en banc, withdraw our opinion and judgment issued December 1, 2005, and substitute the following in its place.

The sole issue raised in this appeal is whether Webb County is authorized to construct an international toll bridge within the municipal limits of a home-rule city, the City of Laredo, without the City's consent. The district court entered a declaratory judgment in favor of Webb County stating that Chapter 364 of the Texas Transportation Code provides the County with such authority. *See* Tex. Transp. Code Ann. § 364.001 (West 1999). We will reverse and render in part and reverse and remand in part.

**BACKGROUND**

Currently, there are four international toll bridges located in the Laredo area providing access between the United States and Mexico for commercial, passenger, and pedestrian traffic.[1] The City owns each of these bridges, comprising the "Laredo Bridge System," from which the City derives a significant amount of annual revenue.[2] In the late-1990s, officials from the City of Laredo, Webb County, and Mexico began contemplating the need for a fifth international bridge connecting Mexico to Texas over the Rio Grande River. As of 2000, both the City and the County had expressed intentions to construct this new bridge through Laredo.[3] In May 2001, it became clear that the City's and the County's intentions were in competition with one another when the City adopted an official resolution declaring its opposition and lack of consent to the County's proposed construction of the bridge.[4]

In order to construct an international toll bridge over the Rio Grande, a political subdivision must receive the approval of the State of Texas through the Texas Department of

---

[1] Specifically, these are the Gateway to the Americas Bridge (Bridge I), the Juarez-Lincoln International Bridge (Bridge II), the Columbia-Solidarity Bridge (Bridge III), and the World Trade Bridge (Bridge IV).

[2] The City owns the northern sides of the bridges, while the Caminos y Puentes Federales owns the southern sides. Accordingly, the City collects tolls on these bridges from southbound traffic, and CAPUFE collects tolls from northbound traffic. The United States and Mexico each have customs and immigrations offices that control traffic at the border.

[3] Although the City's and County's proposed locations for the bridge are 2.65 miles apart, both proposed locations lie within the municipal limits of Laredo.

[4] The County urges that it "has consistently requested that the City and County jointly undertake the construction of the next international bridge in Laredo, Webb County, Texas," but "the City has rebuked those offers." Correspondence in the record reflects that the County sought to partner with the City in constructing the bridge, and the City declined.

Transportation ("TxDOT"), the United States, and Mexico. *See id.* § 201.612 (West Supp. 2006); *see also* 33 U.S.C.A. §§ 535-535b (2001) ("International Bridge Act"). Both the City and the County submitted applications to TxDOT for approval to construct a fifth international bridge in Laredo. In 2004, TxDOT approved both applications. Thereafter, both the City and the County submitted federal applications for presidential permits to construct the bridge; these applications are still pending.

On November 24, 2004, the County petitioned the district court for a declaratory judgment that it was authorized to construct the toll bridge within the municipal limits of Laredo, despite the City's objections and without the City's consent. The County alternatively sought a declaration that, if the City's consent was required, the City should not be entitled to withhold its consent in this case because its bond covenants, which would be used to fund the construction, are unlawful. *See* Tex. Gov't Code Ann. § 1205.021 (West 2000) (governing public-security declaratory judgment actions).

On March 25, 2005, the district court granted the County's requested declaratory relief, stating that the County was authorized to construct the toll bridge without the City's consent. The court did not reach the County's alternative argument about the bond covenants. The City appealed that judgment to this Court. Although presented as four separate challenges, the City essentially raises one issue on appeal: Did the district court err by declaring that the transportation code authorizes Webb County to construct an international toll bridge through the City of Laredo, a home-rule city, without the City's consent?

3

**ANALYSIS**

The establishment and control of public roadways is primarily a function belonging to the State, and the legislature has discretion to delegate such authority to political subdivisions or agencies of the State, as permitted by the constitution. *Robbins v. Limestone County*, 268 S.W. 915, 918 (Tex. 1925); *City of Piney Point Village v. Harris County*, 479 S.W.2d 358, 365 (Tex. Civ. App.—Houston [1st Dist.] 1972, writ ref'd n.r.e.). Here, we are asked to resolve an apparent conflict between the legislature's competing grants of authority to cities and to counties over certain public roadways, specifically, over the construction of an international toll bridge within a home-rule city's limits.

Questions of statutory construction are legal matters subject to *de novo* review. *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002). When interpreting a statutory provision, we must ascertain and effectuate the legislative intent. *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex. 2004). To do so, we must give the words used by the legislature their plain and common meaning, read the statute as a whole, and consider the statute's history and purposes as well as the consequences of alternate constructions. *See* Tex. Gov't Code Ann. § 311.023 (West 2005); *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004); *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000).

**Chapters 364 and 367**

Transportation code section 364.001(a) states that "[a] county bordering the Rio Grande, acting through the commissioners court of the county, as a part of its road and bridge system may acquire a toll bridge by any method, including by: (1) construction." Tex. Transp.

4

Code Ann. § 364.001(a). We infer from section 364.002 that the authority granted in the preceding section covers an international toll bridge connecting the United States and Mexico. *Id*. § 364.002 (West 1999) (in connection with acquisition of toll bridge, county may acquire interest in real property or other structure from United Mexican States). Thus, it is undisputed that Webb County is authorized to construct a toll bridge, as part of its road and bridge system,[5] connecting the land within its borders to Mexico over the Rio Grande. *Id*. §§ 364.001(a), .002.

The legislature, however, granted overlapping toll bridge authority to certain cities in sections 367.001-.003, which provide that "municipalities within 15 miles of a section of the Rio Grande" have the right to "construct . . . a toll bridge over a section of the Rio Grande that forms the border between this state and the United Mexican States." *Id*. §§ 367.001-.003 (West Supp. 2006); *see also* Tex. Gov't Code Ann. § 1509.213 (West 2000) (construction activity of municipality related to toll bridge over Rio Grande is "a proper municipal function"). Thus, it is also undisputed that the City of Laredo is authorized to construct a toll bridge connecting the land within its borders to Mexico over the Rio Grande. Tex. Transp. Code Ann. §§ 367.001-.003.

In this case, the City is located within the County, both the City and County seek to construct the same international toll bridge within the municipal limits, efforts to construct the bridge pursuant to a joint agreement have failed, the City contests the County's application to construct the bridge, and the City is incorporated as a "home-rule city." Under these facts, the issue is whether the authority granted to Webb County in chapter 364 is superior to the authority granted to the

---

[5] The County contends, and the City does not challenge, that the proposed bridge, if constructed by the County, would satisfy the statutory meaning of being "part of the County's road and bridge system."

5

City of Laredo in chapter 367, as well as the authority vested in the City through its home-rule status, and permits the County to construct the international toll bridge *inside the City's municipal limits, without the City's consent*.[6]

Nothing within the statutory framework expressly resolves this issue.[7] Unless and until the legislature speaks directly on the dispute created by its overlapping grants of authority, we resolve the dispute in deference to the well-established precedent that, within the boundaries of a home-rule city, the municipality's roadway authority prevails over the county's. *See Tri-City Fresh Water Supply Dist. v. Mann*, 142 S.W.2d 945, 948 (Tex. 1940) ("[T]he powers of such governmental agencies as counties . . . 'are generally more strictly construed than those of incorporated municipalities.'"); *City of Breckenridge v. Stephens County*, 40 S.W.2d 43, 44 (Tex. 1931) (incorporated municipality has "paramount jurisdiction" and control over its streets and highways; county has no authority to improve them in conflict of city's jurisdiction in absence of city's consent to do so); *Myers v. Martinez*, 320 S.W.2d 862, 866 (Tex. Civ. App.—San Antonio), *rev'd on other grounds*, 326 S.W.2d 121 (Tex. 1959) ("The doctrine of local self-government requires that the will of the smaller unit shall control over the will of the larger unit . . . [and] will not support a rule to the effect that the county must control the precinct or city.").

---

[6] We do not attempt to resolve every potential conflict that may arise between a city's and a county's authority to construct roads or transportation related improvements. We limit our holding to the circumstances presented by this case.

[7] In our original opinion we concluded, based on section 367.017, that the legislature had "expressly provided that the municipal authority granted in section 367.003 shall control over any other conflicting law." Upon further consideration, we conclude that section 367.017 cannot be so broadly construed. *See* Tex. Transp. Code Ann. § 367.017 (West Supp. 2006).

6

**Home-Rule City Authority Compared to County Authority**

Home-rule cities do not depend on the legislature for specific grants of authority but, instead, have a constitutional right of self-government and look to the legislature only for specific limitations on their power. Tex. Const. art. XI, § 5; *Quick v. City of Austin*, 7 S.W.3d 109, 122 (Tex. 1999); *Dallas Merch. & Concessionaires Ass'n v. City of Dallas*, 852 S.W.2d 489, 490-91 (Tex. 1993). For the legislature to divest a home-rule city of such authority, the legislature's intent to do so must be expressed with "unmistakable clarity." *In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002).

Counties, on the other hand, may exercise only those powers expressly conferred by either the legislature or the Texas Constitution, and the powers conferred on counties are considered duties rather than privileges. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 28 (Tex. 2003). Although counties are vested with general authority over roadways, *see* Tex. Transp. Code Ann. § 251.016 (West Supp. 2006),[8] counties do not have unlimited authority over public thoroughfares, especially those inside the boundaries of a home-rule city. *City of San Antonio*, 111 S.W.3d at 31-32 (because statutory grant of "general control over roads" in now-amended transportation code section 81.028 was limited to county's "duty to make the roadways safe for public travel," county lacked authority to petition municipality to annex portions of county roads).

When a town incorporates itself as a home-rule city, it "removes the power from the [county] to lay out and regulate roads within the city limits," and transfers that power to the

---

[8] This has been the law since 1876. *See* Act of July 22, 1876, 15th Leg., R.S., ch. LV, § 4, 1876 Tex. Gen. Laws 887-88.

7

governing body of the municipality. *Harrison County v. City of Marshall*, 253 S.W.2d 67, 69 (Tex. Civ. App.—Fort Worth 1952, writ ref'd). Moreover, the legislature has expressly provided that home-rule cities exercise "exclusive control over and under the public highways, streets, and alleys of the municipality." Tex. Transp. Code Ann. § 311.001(a) (West 1999); *see Adams v. Rockwall County*, 280 S.W. 759, 760-61 (Tex. 1926) (no ambiguity exists about legislature's intent to grant exclusive control to incorporated cities over highways within their borders, and this power operates against counties). Because the transportation code defines "highway" as "includ[ing] a tolled . . . bridge," we interpret a home-rule city's "exclusive control" as extending to toll bridges within its borders. *See* Tex. Transp. Code Ann. § 221.001 (West Supp. 2006); *see also City of Houston v. Goings*, 795 S.W.2d 829, 832 (Tex. App.—Houston [14th Dist.] 1990, pet. denied) (city was responsible for injury arising from bridge construction because "public bridge forming a connecting link in a [municipal] street or highway is part of that street or highway"); Op. Tex. Att'y Gen. No. H-936 (1977) (recognizing, even before enactment of statute specifically granting power, that home-rule city bordering Rio Grande had authority to build international bridge connecting city with Mexico based on city's general rights of self-government as granted in incorporating charter and fact that there had been no expression of legislative intent to limit such power).

This case does not present the first situation in which a home-rule city and a county have found their overlapping powers to be in conflict. For over a century, Texas courts have resolved this conflict by holding that, within the territorial limits of a home-rule city, the county's general authority over roadways must yield to the city's specific authority within its limits. *See, e.g.,*

8

*State v. Jones*, 18 Tex. 874, 878 (1857). In *Jones*, the supreme court was asked to resolve "a conflict of jurisdiction between . . . Goliad county, and the . . . town of Goliad, in respect to the authority of these two bodies over the roads, streets, and thoroughfares, which run through and are within the incorporated limits of the town." *Id*. The court began by noting that counties exercise general jurisdiction over county roads while home-rule cities have special authority over the roadways within their boundaries. *Id*. The court then held that, in order to avoid an "irreconcilable conflict" between these competing powers, the proper interpretation of the law was that, "when both bodies attempt to act in opposition to, and in conflict with each other, the power and authority of one must cease and yield to that of the other, and in [this situation], . . . the authority of the county court must yield to that of the town council." *Id*. at 881. Relying on this holding, the Galveston court of appeals held that a county was only permitted to expend funds to improve a road within the corporate limits of a city if the city consented. *Hughes v. County Comm'r Court of Harris County*, 35 S.W.2d 818, 821 (Tex. Civ. App.—Galveston 1931, no writ).

The supreme court also emphasized the requirement of city approval in *City of Breckenridge* by holding that counties are permitted to make improvements to city streets "when such improvements are made without conflicting with the jurisdiction of the municipality, or with its consent or approval." 40 S.W.2d at 44. Similarly, the Dallas court of appeals held that counties may only exercise control over a home-rule city's roadways if the city has failed to assert its authority because, otherwise, "unseemly conflicts and interminable confusion" would result from a "twilight zone in which cities and counties have concurrent jurisdiction." *Benat v. Dallas County*, 266 S.W. 539, 541 (Tex. Civ. App.—Dallas 1924, writ ref'd); *see also* Op. Tex. Att'y Gen.

9

No. JC-0036 (1999) ("common law rule that a county may exercise limited authority over a city street if the city consents" was incorporated into transportation code section 251.012); Op. Tex. Att'y Gen. No. H-1018 (1977) ("Home rule cities may also exercise exclusive jurisdiction over their streets . . . [and] [i]t is well established that this authority prevails over the right conferred upon the commissioners court [over roadways]. . . . [It has been recognized that a commissioners court has] limited authority . . . over city streets, provided the city consents.").

The supreme court's analysis in *Adams v. Rockwell County* is also instructive. *See* 280 S.W. 759. The question presented in *Adams* was whether the general roadway authority granted to the County could be interpreted as an exception to the specific grant of "exclusive control" given to the City of Royce, an incorporated municipality, over "the streets, alleys, and public grounds and highways, of the city," as to allow the County to condemn property within the City's territorial limits for road construction purposes without the City's consent. *Id*. at 760-761. The *Adams* court noted that nothing within the statutes expressly stated whether "the authority given [to the County] may, or may not, be exercised in respect to land, or a road (proposed or actual), within an incorporated city." *Id*. at 760. Thus, the court attempted to ascertain the legislative intent by considering any law that may be in pari materia. *Id*. Although there were "other statutes effactually denying to the County the power [to condemn such land within a home-rule city]," the court ultimately determined that there was "no irreconcilable conflict" between the County's general roadway authority and the City's specific grant of exclusive control over streets and highways within the municipality. *Id*. at 760-61. The two powers could "operate with that harmony and accord which we believe was contemplated" as long as the County "exercised [its authority] within its territorial jurisdiction,"

10

therefore causing "no interference with the city authorities in their 'exclusive control' of the streets and highways within the cities." *Id*. at 761. The court concluded by noting that, even if the County had the authority to condemn land within an incorporated municipality for road construction purposes, the City's authority would be superior to the County's, allowing the City to "immediately . . . proceed to undo what shall have been done by the County." *Id*. at 761. "This idea," said the court, "also has support in the terms of every other statutory provision in any way relating to the subject." *Id*.

As in *Adams*, we do not see an "irreconcilable conflict" between the County's ability to construct an international toll bridge over the Rio Grande, as granted in chapter 364, and the City's ability to do the same, as granted in chapter 367. *See* Tex. Transp. Code Ann. §§ 364.001-.002, 367.001-.003. Rather, these overlapping grants of authority may harmoniously coexist so long as the County seeks to exercise its authority within its own territorial limits. If, however, the County seeks to exercise this authority within the boundaries of a home-rule city without the City's consent, then—as courts have held for over a century—the County's authority must yield to the City's. *City of Breckenridge*, 40 S.W.2d at 44; *Adams*, 280 S.W. at 760-61; *Jones*, 18 Tex. 881; *Hughes*, 35 S.W.2d at 821; *Benat*, 266 S.W. at 541.

**Additional Statutory Provisions**

Also like *Adams*, we find this interpretation to be consistent with other statutory provisions related to the authority of counties and cities over roadway construction. *See* 280 S.W. at 761. In both the transportation code and the government code, the legislature has generally incorporated the idea that a city must consent before a county may finance roadway construction

11

within the city's borders. First, transportation code section 251.012, which is a "general provision" regarding a county's authority over roads and bridges within a municipality, expressly requires "the approval of the governing body of a municipality" before a county may "finance the construction . . . of a street or alley . . . that is located in the municipality, including the provision of . . . bridges." Tex. Transp. Code Ann. § 251.012 (West Supp. 2006); *see also id.* § 451.065(d) (West 1999) (Metropolitan Rapid Transportation Authority may not perform any of its authorized activities, including bridge construction, inside municipality absent municipality's prior consent). The transportation code also requires the "prior consent of the governing body of the municipality to condemn and acquire real property . . . that the commissioners court determines is necessary or convenient to any road that forms or will form a connecting link in the county road system or in a state highway." *Id*. § 251.101 (West 1999); *see also id.* § 224.003(d) (West 1999) (prior consent of municipality required for county to acquire municipal property for construction of state highway). Further, government code section 791.032, which governs "specific interlocal contracting authority" related to the "construction, improvement, and repair of streets in municipalities," requires the "approval of the governing body of a municipality" before another local government (such as a county) may "contract with the municipality to finance the construction, improvement, maintenance, or repair of streets or alleys in the municipality." Tex. Gov't Code Ann. § 791.032 (West 2004). While these provisions do not control the outcome of the current dispute, they demonstrate a

12

consistent recognition by the legislature that a city's consent is required before another local government unit may construct or improve streets or other roadways within the municipality.[9]

The County argues that, contrary to these provisions, section 251.083 of the transportation code conclusively demonstrates that the County need not obtain the City's consent to construct an international toll bridge within the municipal territory. *See* Tex. Transp. Code Ann. § 251.083 (West 1999). We disagree. Section 251.083 states that "[t]he commissioners court of a county may erect a bridge in a municipality in the manner authorized by law for the erection of a bridge outside a municipality." *Id*. First, we question whether this provision even applies to the dispute at hand because it is included within a subchapter exclusively pertaining to *county bridges*, whereas section 364.001 is part of a specific statutory scheme governing *toll bridges in counties bordering the Rio Grande*. Based on the legislature's decision to enact distinct regulations for county bridges, separate and apart from regulations concerning international toll bridges, we do not believe that section 251.083 should be interpreted as meaning that a county may erect an international toll bridge in a municipality in the manner authorized by law for the erection of an international toll bridge outside a municipality.

Alternatively, even if we were to read section 251.083 as being engrafted upon section 364.001, it would not permit the County to construct an international toll bridge within the territorial limits of the City without the City's consent. Section 251.038 permits a county to erect a bridge

---

[9] As previously discussed, municipal "streets" include highways and bridges within the municipality. *See* 43 Tex. Jur. 3d *Highways & Other Public Ways* § 6 (2006) ("[S]treets of cities or towns are highways . . . and include[] all urban ways that can be and are generally used for ordinary purposes of travel . . . no matter what it may be called. . . . Thus, . . . a bridge that forms a connecting link in the street system [is part] of the street.").

13

inside the municipality "in the manner authorized by law" for erecting a bridge outside the municipality. According to the County, because the City's consent is not required to construct a bridge outside the municipality, there is likewise no consent requirement to construct the bridge inside the municipality based on section 251.083. The only authority interpreting this language, however, concludes otherwise. The Attorney General concluded that "the county's bridge building authority under article 2356[10] is limited by the requirement[] . . . that it build bridges within corporate limits . . . *only with the city's consent*." Op. Tex. Att'y Gen. No. H-1018 (1977) (emphasis added).[11] The Attorney General further emphasized that, while a county's bridge building authority is limited within both general law and home-rule cities, logically, the county's authority would be more limited in the latter because "[h]ome rule cities may exercise exclusive dominion over their streets and *may reject county proposals with respect to the development of streets*." *Id*. (emphasis added). Similarly, working under the presumption that section 251.083 applies to the current dispute, we find instructive transportation code section 311.006, a "general provision relating to municipal

---

[10] Article 2356 was the predecessor to section 251.038. Act of April 20, 1895, 24th Leg., R.S., ch. 107, § 1, 1895 Tex. Gen. Laws 164. At the time of the 1977 Attorney General Opinion article 2356 stated: "Said [commissioners] court may erect bridges within the corporate limits of any city or town to the same extent and under the same conditions now prescribed by law for the construction of bridges outside the limits of any city or town." Although this language had been slightly altered from the 1895 enactment, the substance of the provision was the same in 1977 and remains so today. *See* Tex. Transp. Code Ann. § 251.083 (West 1999).

[11] No court has ever construed the meaning of this language. In fact, section 251.083 has never been cited in an opinion. Although two cases refer to former versions of the statute, neither interprets the meaning of "in the manner authorized by law." *See City of Breckenridge v. Stephens County*, 26 S.W.2d 405, 410 (Tex. Civ. App.—Eastland 1930), *rev'd*, 40 S.W.2d 43 (Tex. 1931) (determining authority granted to county over bridges in article 2356 did not apply to streets and highways); *City of Llano v. Wilbern*, 152 S.W. 474, 477 (Tex. Civ. App.—Austin 1912, no writ) (merely citing provision in connection with holding regarding county's duty to maintain bridges it owns).

14

streets." It provides that "in a Type B general-law municipality, the commissioners court of a county may construct a bridge . . . if . . . the governing body of the municipality consents." Tex. Transp. Code Ann. § 311.006 (West 1999). If a county must obtain a city's prior consent to construct a bridge within the municipal limits even in a general-law city, which has a lesser right of self-governance than a home-rule city, then it is only logical that a home-rule city's prior consent would also be required.

**Resolution of Dispute**

Considering the legal authorities set forth above and recognizing that the legislature is charged with knowledge of the existing law, *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 531 (Tex. 2004), we must presume that, when enacting the relevant provisions of the transportation code, the legislature understood (1) that home-rule cities, such as the City of Laredo, have a constitutional right of self-government, Tex. Const. art. XI, § 5; (2) that within the limits of a home-rule city, the city's constitutional right of self-government prevails over a county's general authority, *City of San Antonio*, 111 S.W.3d at 28; *Adams*, 280 S.W. 760-61; and (3) that, to divest a home-rule city of its authority, the legislature must speak with unmistakable clarity, *In re Sanchez*, 81 S.W.3d at 796. Consequently, the legislature's decision to remain silent about the requirement of city approval in section 364.001(a) is consistent with an intention to maintain the rule that, when a county's authority conflicts with a home-rule city's regarding streets or highways (inclusive of bridges) within the municipality, the county must yield to the city. *See Adams*, 280 S.W. at 760; *Jones*, 18 Tex. at 881. It was unnecessary for the legislature to specifically require a home-rule city's consent or

15

approval before a county may construct an international toll bridge within the city's territory because this limitation is implied by the historical framework in which section 364.001 was enacted.

Furthermore, nothing in the applicable statutes reflects an unmistakably clear expression of legislative intent to divest a home-rule city bordering the Rio Grande of its exclusive control over streets and highways within its territorial limits, which extends to a right of self-governance over bridges in the municipality and, more specifically, to the authority granted in sections 367.001-.003 to construct an international toll bridge inside the municipality. *See City of Galveston v. State*, No. 04-0890, 2007 Tex. LEXIS 193, at *5 (Tex. Mar. 2, 2007) ("The question thus is not whether any statute *grants* home-rule cities [the asserted privilege], but whether any statute *limits* their [right to the privilege]. Such limits exist only when a statute speaks with 'unmistakable clarity.'"). Accordingly, we conclude that the City's consent is required before the County may exercise its authority to construct an international toll bridge within the municipal limits.

The County argues that interpreting section 364.001(a) as requiring the City's consent renders meaningless the authority granted to counties in that section. *See* Tex. Transp. Code Ann. § 364.001. In making this argument, however, the County overlooks its ability under section 364.001(a) to construct an international toll bridge within its county limits and outside the city limits, regardless of whether the City approves. *See Adams*, 280 S.W. at 761 (county's power and city's power could operate in harmony as long as county asserted authority within its own territorial limits and outside of city's). Webb County has sixty miles of land bordering the Rio Grande outside of Laredo's city limits on which it could construct a toll bridge without the City's consent. Yet, the

16

County's preference is to locate the bridge within the City. The statute does not prohibit a county from ever constructing a toll bridge within a city's limits, nor does it provide cities with exclusive jurisdiction over international toll bridges. It simply requires that the County obtain the City's approval to construct a toll bridge within the City's limits.

Although the County disagrees with this interpretation, it points to nothing that would demonstrate an unmistakably clear expression of legislative intent to divest the City of the authority specifically granted to it in chapter 367 and offers no alternative solution for resolving the conflict presented in this case. The answer cannot be that a city must always permit a county to construct the bridge within its borders, either individually or by joint agreement, or otherwise be forced to dispute the issue into perpetuity. Such indefinite conflict between counties and cities would be a waste of state resources and thereby belies intent for a contrary interpretation.[12] *See Benat*, 266 S.W. at 541 (if home-rule city's consent were not required before county could construct roadways within municipality, "unseemly conflicts and interminable confusion" would result from a "twilight zone in which cities and counties have concurrent jurisdiction"). Likewise, as discussed below, the answer cannot be that the federal government must ultimately determine how the State should allocate authority between competing political subdivisions because that would impermissibly encroach on the State's sovereign powers and would present an unfair strain upon and inefficient use of federal resources. *See Milam County v. Bateman*, 54 Tex. 153, 165 (1880) (The "legislature as the representative of state sovereignty can exercise absolute power [over political rights and

---

[12] The County professes that it has already spent over $3 million to advance its competing application against the City's.

17

privileges it has delegated to political subdivisions of the State] unless restricted by the organic law. If it could not exercise such power . . . we might have a system of petty discordant governments within a government, without unity of design or action.").

**Supremacy Clause Argument**

The County urges that it violates the Supremacy Clause to interpret section 364.001(a) as requiring the City's consent because Congress has exclusive jurisdiction over international toll bridges. *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land."). According to the County, requiring it to obtain the City's consent before constructing an international toll bridge within the City's territorial limits unreasonably empowers the City to prevent the construction of such a bridge even if Texas, the United States, and Mexico all approve it. We disagree.

Congress has granted its consent "to any persons [including local government agencies] to construct and maintain a bridge across or over any of the navigable waters of the United States." *See* 33 U.S.C.A. §§ 491, 497 (2001). More specifically, in the International Bridge Act, Congress has granted its consent "to the construction, maintenance, and operation of any bridge and approaches thereto, which will connect the United States with any foreign country . . . and to the collection of tolls for its use, so far as the United States has jurisdiction." *Id*. § 535. This consent, however, is not unlimited. Rather, to construct an international toll bridge under this Act, the constructing party must obtain "the approval of the proper authorities in the foreign country concerned," *id*. §§ 535, 535a; the approval of the President, *id*. § 535b; and, ultimately, the approval of the Secretary of Transportation, *id*. § 535c.

18

Furthermore, pursuant to the transportation code, a political subdivision seeking to construct an international toll bridge over the Rio Grande must also submit an application to and obtain approval from the State. Tex. Transp. Code Ann. § 201.612. Section 201.612 recognizes that federal approval is also required and expressly permits an applicant to seek state and federal approval "concurrently." *Id*. § 201.612(a), (b). The statute further contemplates that the state determination will be made first and that, if the State denies approval, "the applicant shall withdraw the request for approval from the United States." *Id*. § 201.612(g). Thus, just because the federal government provides the ultimate approval or disapproval does not strip the State of its regulatory authority to make preliminary determinations regarding a political subdivision's ability to construct an international toll bridge over the Rio Grande. *See id*. § 201.612(f) (authorizing transportation commission to adopt rules to administer State's regulation of international toll bridge construction); 43 Tex. Admin. Code §§ 15.70-.76 (2005) (resulting administrative regulations).

Because there is no irreconcilable conflict, the federal regulations do not preempt the state regulations. Rather, as expressed by our sister court regarding a similar bridge-construction issue under the Supremacy Clause:

> The regulatory scheme of the State can be harmonized and co-exist with the regulatory scheme at the national level. The effect of the federal regulatory scheme, as it relates to the construction of a bridge across the Brazos River, can be reasonably interpreted to make the erection of such a bridge dependent upon the State's concurrent or joint assent. *See Cummings v. Chicago*, 188 U.S. 410, [431] (1903). Without the State's consent, [appellant] could not have lawfully erected the bridge even if he had obtained the proper permit from the federal government. *See id.* Accordingly, because the federal regulatory scheme clearly envisions the right of the State to grant or withhold its permission, the two regulatory schemes do not conflict. In the absence of a conflict, the Supremacy Clause does not nullify the State's

19

> regulatory authority over the navigable waters within its boundaries. *See*
> *Hillsborough County, Fla.* [*v. Auto. Med. Labs.*, 471 U.S. 707, 713 (1985)].

*Trice v. State*, 712 S.W.2d 842, 848-49 (Tex. App.—Waco 1986, writ ref'd n.r.e.); *see also*
*Brownsville & Matamoros Municipal Bridge Co. v. Gateway Bridge Co.*, 2 S.W.2d 1012, 1013-14
(Tex. Civ. App.—San Antonio 1928, no writ) (recognizing that state and federal governments each
exercise authority in granting approval to construct international toll bridge over Rio Grande and
stating that there "is no conflict of any statutes involved").

Thus, the International Bridge Act does not preclude the State from exercising
regulatory authority over the construction of international toll bridges within its borders.  As part of
this regulatory authority, the legislature has granted both counties and cities bordering the
Rio Grande the right to construct such a bridge, assuming the requisite approvals are obtained at both
the state and federal level.  *See* Tex. Transp. Code Ann. §§ 364.001-.002, 367.001-.003.  In the rare
instance of conflict as presented in this case—where the City and the County each seek to build the
same bridge in essentially the same location, which is inside the boundaries of a home-rule city, and
the City objects to the County's construction of the bridge—the legislature's grant of overlapping
authority to counties and cities must be resolved.  Interpreting the statute to require a home rule city's
consent before a county may construct an international toll bridge within the municipal borders in
no way usurps the authority exercised by the federal government over the construction of the bridge.
Rather, once the dispute is resolved at the state level, the federal government maintains its ultimate
ability to grant or deny the presidential permit for construction of the bridge.  There is no reason why
federal taxpayer dollars should be spent to resolve a dispute between two political subdivisions of

20

the State. The requirement of city approval, therefore, fits within the framework of the Act, rather than being contrary to it.

**Collateral Attack Argument**

The County's final argument is that the City's appeal serves as an impermissible collateral attack of the TxDOT order approving the County's application to construct the bridge. The County argues that the City failed to attack the order and that, by holding that the City's consent is required for the County to construct the bridge within the municipal limits, this Court impermissibly substitutes its judgment for that of TxDOT. First, we disagree with the claim that the City did not challenge TxDOT's order. By opposing the County's TxDOT application at a hearing, filing a competing application, and obtaining a competing order of approval from TxDOT, the City consistently contested TxDOT's approval of the County's proposal.

Second, we disagree that this opinion is an improper collateral attack. Although it is true that TxDOT had approved the County's application, TxDOT had also approved the City's application, and TxDOT expressly recognized that its order did not resolve the dispute between the competing applications. Because TxDOT declined to rule on the issue, our opinion does not "collaterally attack" a binding judgment. *See Browning v. Prostock*, 165 S.W.3d 336, 346 (Tex. 2005) ("A collateral attack is an attempt to avoid the binding force of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief which the judgment currently stands as a bar against.").

Finally, our opinion does not constitute an improper substitution of judgment. Although TxDOT issued dual approvals, it is clear that both entities cannot construct the same

21

international toll bridge, and this Court was specifically asked to resolve the dispute between them, based on a suit that was filed by the County. The County sought a declaration of its rights to construct the bridge within the City over the City's objections and without the City's consent, and the declaratory judgment issued by the trial court was validly appealed to this Court. Just because we disagree with the trial court's interpretation of chapters 364 and 367, and, therefore, resolve the conflict created by the legislature's overlapping grants of authority and by TxDOT's dual approvals in favor of the City, does not mean that we have improperly substituted our judgment for that of TxDOT.

## CONCLUSION

After considering the historical and statutory framework in which section 364.001(a) was enacted, we conclude that the legislature intended to grant counties bordering the Rio Grande the power to construct international toll bridges on county land either outside of a home-rule municipality's territorial limits or inside those limits if the municipality consents or approves. The trial court, therefore, erred in declaring that section 364.001(a) authorizes Webb County to construct a fifth international toll bridge within the City of Laredo without the City's consent. The City's four issues addressing this error are sustained. Accordingly, we reverse the trial court's judgment and render judgment declaring that Webb County lacks the statutory authority to construct a toll bridge within the City of Laredo without the City's consent or approval.

We remand in part, however, for further proceedings to address the County's alternative claim that, if the City's consent is required, then the City's refusal to consent in this case unlawfully prevents competition based on bond covenants that violate public policy. The

underlying declaratory judgment stated that, based on its finding that the County is authorized to construct the toll bridge in lieu of the City's consent, "it does not reach the alternative issues raised by Webb County."  Because we reverse the trial court's ultimate finding and hold that the City's consent or approval is required, we remand for the trial court to consider the County's alternative claim that the City's bond covenants are unlawful.

The County's motions for rehearing and rehearing en banc are overruled.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Reversed and Rendered in part; Reversed and Remanded in part on Motion for Rehearing

Filed:   April 4, 2007